In re Mildred Agatha LINK, Appellant.

No. 67529.

Supreme Court of Missouri,
En Banc.

July 15, 1986.

Clifford Schwartz, Charles M. Shaw, Clayton, for appellant.

Scott O. Marshall, St. Louis, James Robinson, Chesterfield, for respondents.

ROBERTSON, Judge.

Mildred Agatha Link appeals from an order of the Probate Division of the Circuit Court of the County of St. Louis, declaring her incompetent, and appointing a guardian of her person, and a conservator of her estate. On appeal, Ms. Link alleges that the trial court erred by failing to follow § 475.075, RSMo Cum.Supp.1984, which sets out the procedure for hearings on capacity or disability. The Eastern District found no error, and affirmed the decision of the trial court. We granted transfer. Treating this case as on original appeal, Mo. Const. art. V, § 10, we reverse and remand.

### I.

Appellant is an 80–year–old, unmarried woman with substantial financial assets. Beginning in late 1983, she began to experience increasing loss of memory, confusion and disorientation. She also began to exhibit a growing lack of attention to her personal and financial affairs.

The event which seems to have precipitated the proceedings at issue is appellant's apparent decision in February, 1984, to give a valuable parcel of farm property to A.R. Strothman, the tenant-farmer who had been sharecropping the land. On various occasions prior to this decision, appellant had expressed displeasure with the manner in which Strothman had managed the farm. Thus, when appellant and Strothman met with appellant's banker for the purpose of notarizing appellant's signature on the deed to the land, the banker declined to notarize the document and suggested that appellant consult with counsel.[1]

Notwithstanding her banker's advice, appellant allegedly directed Strothman to bring a different notary to her home to validate her signature on the deed. When this was accomplished, appellant allegedly handed the deed over to Strothman.

Shortly thereafter, attorney Robert Copeland was apprised of the transaction, and was told that Strothman wanted appellant to pay the gift tax on the farm. When Mr. Copeland advised against this, he was discharged.

Next, Strothman apparently took appellant to meet a new attorney, Northcutt Coil. Mr. Coil allegedly directed Strothman to return the deed to appellant to give her time to reconsider her decision. Strothman claims to have done so. Strothman further claims that he received the deed in the mail from a local abstract company a short time later. The deed had been recorded.

A few weeks later appellant developed breathing problems and had to be hospitalized. During her hospitalization, Mr. Coil prepared, and appellant signed, a power of attorney making Strothman appellant's agent. Under the aegis of this authority, Strothman twice went to appellant's bank;

---

1. At the time appellant had had prior dealings with at least two local attorneys. One attorney, Robert Copeland, had previously represented appellant and was responsible for drafting appellant's first will. He had also been consulted regarding the possibility of establishing some type of protective trust for appellant after questions arose about an earlier sale of timber. No trust was ever established. Appellant had been directed to the second attorney, William Kirby, by respondent Loretta Coulter, when appellant expressed a desire to rewrite her will. The will, as modified, included a gift of cash and property to Coulter and her husband. The new will also changed disposition of the residue of appellant's estate to a church organization with which Coulter was affiliated.

the first time seeking financial information, presumably for tax purposes; and the second time seeking to have some funds transferred to an account in another bank. In both cases, the bank declined Strothman's request because the power of attorney had not been properly recorded.

Despite appellant's personal involvement in these events, when questioned by friends about the gift of the property and the power of attorney, appellant neither remembered nor approved of the actions taken. Appellant also allegedly asked that respondent Coulter assist her in regaining the property given to Strothman.

Accordingly, in early April, 1984, respondent Loretta Coulter filed a petition in Probate Court seeking her appointment as appellant's guardian and conservator.[2] Approximately one month later, a second petition was filed by appellant's estranged brother, respondent Andrew Link, and his attorney, respondent Scott Marshall, seeking appointment of Mr. Marshall as appellant's guardian and conservator.[3]

Upon the filing of the respective petitions, the court issued notice to appellant pursuant to § 475.075. The notice informed appellant of the filing of the petitions, the date and time of the hearing, the name and address of appointed counsel, Timothy W. Kelly, and appellant's substantive rights under § 475.075. Among these rights were the right to a jury trial and the right to be present at the hearing. § 475.075.8(2), (8).

Appellant was served with notice on April 24, 1984. On May 21, 1984, Northcutt Coil entered his appearance as appellant's private counsel. On June 25, 1984, the trial court ordered appointed counsel to withdraw. There is no indication that Mr. Kelly met or spoke with appellant prior to his withdrawal. There is no indication that the court made any inquiries of either Kelly or Coil before authorizing Kelly's withdrawal.

Prior to trial respondents Link and Marshall filed a motion with the court seeking a mental examination of appellant. When the trial court granted the motion, attorney Coil sought a writ of prohibition to prevent the examination. The application for the writ was denied. Respondents Link and Marshall also subpoenaed appellant as a witness at trial. Appellant's counsel filed a motion to quash the subpoena, which was granted.

The two petitions were consolidated and a trial was conducted on July 19 and 20, 1984. Since appellant's counsel did not request a jury, nor object to proceeding without one, the case was tried to the court. Appellant appeared through counsel. When the court asked if appellant were present, an unidentified woman claiming to be appellant's cousin attempted to inform the court that appellant wished to be present. Appellant's counsel objected. The court ruled that the woman was not a party and would have to confer with the attorneys before she would be allowed to speak. Counsel for respondent Coulter requested a moment to talk with the woman. Appellant's attorney objected claiming that any such conversation would "change [his] whole program" because things had been going on "behind [his] back" that he had just discovered. The court ruled that the hearing should proceed, and that any conversation with the alleged cousin would have to take place during a break in the proceedings. The record contains no further information regarding this individual or her allegation.

Several witnesses, including respondent Coulter and two physicians, testified on behalf of the petitioners. Much of the testimony centered on the circumstances surrounding the gift of the farm to Strothman. The lay witnesses testified that appellant was often confused, forgetful and inatten-

---

**2.** Aside from her undoubted concern for appellant, it should be pointed out that the testamentary gift to Coulter was substantially diminished, if not extinguished, by the inter vivos gift to Strothman.

**3.** Appellant specifically exempted respondent Mr. Link as a beneficiary under her revised will.

tive to her personal habits and financial dealings. The two physicians testified that appellant showed symptoms of organic brain disease, a condition which was progressive, and from which recovery was unlikely. These lay and medical witnesses were actively cross-examined by appellant's attorney.

A.R. Strothman also testified for petitioners. His testimony however, was that appellant was competent throughout his dealings with her, and that with a little assistance she remained capable of taking care of herself. Strothman was not cross-examined by appellant's counsel.

No independent evidence was adduced on behalf of appellant.

On the basis of this record, the trial court found appellant to be completely incapacitated and disabled by reason of Alzheimer's disease and appointed respondent Coulter as her guardian and respondent Marshall as conservator of her estate.

## II.

Appellant contends that the trial court failed to adhere to the requirements of § 475.075. Specifically, appellant claims error in that she did not have a jury trial, was not personally present at trial, and did not receive the benefit of court-appointed counsel.[4]

In support of her first claim of error, appellant argues that § 475.075.8(2) requires a jury trial in all competency proceedings. Appellant further argues that the right to a jury trial cannot be waived. Alternatively, appellant contends that the right to a jury trial can be waived only by the alleged incompetent and *appointed* counsel, on the record, in a manner consistent with Rule 27.01.

Appellant further argues that § 475.075.8(8) requires that the alleged incompetent be present at the capacity hearing. If not, appellant continues, the statute requires the trial court to make a record of the

reasons for the alleged incompetent's absence.

Finally, appellant urges that the trial court erred by ordering the withdrawal of appointed counsel upon private counsel's entry of appearance. Appellant contends that by so doing, the trial court denied her the protection and benefit contemplated by the statutory requirement of appointed counsel.

Respondents counter that § 475.075 neither mandates the rights enumerated therein, nor requires that criminal procedural rules apply to the waiver of those rights. Respondents urge that under Rule 69.01(b), appellant's failure to request a jury trial, or to object to the proceedings as held, constituted a waiver of the right to a trial by jury. Respondents contend that appellant's trial counsel affirmatively waived her right to be present and, prior to trial, moved to quash the subpoena which would have compelled her attendance. Respondents submit that these actions are evidence that appellant's absence was voluntary. Respondents further contend that the trial court had no duty to make a record of the reasons for appellant's absence. Respondents claim that trial counsel adequately represented appellant and that the court did not abuse its discretion in ordering appointed counsel to withdraw.

## III.

### A.

Section 475.075, in pertinent part, reads as follows:

3. Upon the filing of a petition under the provisions of subsection 1 of this section or for the approval on behalf of the respondent of a transaction pursuant to section 475.092 or for the rendition of emergency medical treatment under the provisions of section 475.092 or for the rendition of emergency medical treatment under the provisions of section 475.123, the court shall immediately ap-

---

**4.** Appellant also argues that the court's findings were not supported by sufficient evidence. Because we conclude that various deficiencies in the proceeding mandate that we reverse and remand, we do not reach, and offer no opinion on the sufficiency of the evidence.

point an attorney to represent the respondent in the proceeding. The attorney shall visit his client prior to the hearing. If the client is capable of understanding the matter in question or of contributing to the advancement of the client's interest, the attorney shall obtain from the client all possible aid. If the disability of a client compels the attorney to make decisions for the client, the attorney shall consider all circumstances then prevailing and act with care to safeguard and advance the interests of the client. The court shall allow a reasonable attorney's fee for the services rendered, to be taxed as costs of the proceeding. The court-appointed attorney may be permitted to withdraw if the respondent employs private counsel who enters an appearance on behalf of said person.

4. The court may direct that the respondent be examined by a physician or licensed psychologist or other appropriate professional designated by the court, and may allow a reasonable fee for the services rendered, to be taxed as costs in the proceeding....

\* \* \* \* \* \*

5. The court-appointed physician, licensed psychologist or other professional shall submit his report in writing to the court and to counsel for all parties.

\* \* \* \* \* \*

7. The petitioner has the burden of proving incapacity, partial incapacity, disability, or partial disability by clear and convincing evidence.

8. The respondent shall have the following rights in addition to those elsewhere specified:

(1) The right to be represented by an attorney;

(2) The right to have a jury trial;

(3) The right to present evidence in his behalf;

(4) The right to cross-examine witnesses who testify against him;

(5) The right to remain silent;

(6) The right to have the hearing opened or closed to the public as he elects;

(7) The right to a hearing conducted in accordance with the rules of evidence in civil proceedings, except as modified by this chapter;

(8) The right to be present at the hearing.

The current version of § 475.075 renders substantial changes in the rights and procedures involved in a declaration of incompetency, and the corresponding appointment of a guardian or conservator. Prior to 1983, § 475.075 required competency hearings to be conducted before a jury, "except that if neither petitioner nor the alleged incompetent demand a jury, the facts may be inquired into by the court." § 475.075.-1, RSMo 1978 (repealed). Such proceedings were governed by the civil court rules. *Hirst v. Cramer*, 195 S.W.2d 738 (Mo. banc 1946). Failure to demand a jury trial in a competency proceeding, or failure to object to the proceedings as held, constituted a waiver of the right to trial by jury. *In re Moynihan*, 332 Mo. 1022, 62 S.W.2d 410 (1933).

In 1983, the legislature deleted the "demand" language of § 475.075.1 and provided a "bill of rights" for the respondent in a competency or disability hearing. Included among the rights enumerated is the right to a jury trial. The new statute does not specifically discuss the procedures for waiver of this right nor has that issue been addressed by the courts.

Similarly, there has been no judicial evaluation of the nature of the right to be present at the hearing provided by § 475.-075.8-(8). Under previous versions of § 475.075, the alleged incompetent was merely "entitled" to be present at the hearing. *See* § 475.075.2, RSMo 1978 (repealed). This language was interpreted as not requiring the presence of the alleged incompetent at the hearing, provided due notice was given, and the respondent was represented by counsel. *In re Moynihan; Hamilton v. Henderson*, 232 Mo.App. 1234, 117 S.W.2d 379 (1938). While the

alleged incompetent could not be prevented from attending the hearing, there was a presumption, at least when counsel was appointed by the court, that appearance through counsel alone was sufficient to satisfy due process. *In re Moynihan.*

Finally, this case presents the first judicial opportunity to interpret the statutory relationship between court-appointed counsel and private counsel. § 475.075.3.

### B.

For purposes of statutory construction, the legislative intent can be derived from the general purposes of the legislative enactment, and by identification of the problems sought to be remedied and the circumstances and conditions existing at the time of enactment. *Sermchief v. Gonzales,* 660 S.W.2d 683 (Mo. banc 1983). It is presumed that the legislature was aware of the interpretation placed upon existing statutes by the courts, and that in amending a statute, the intent was to effect some change in the existing law. *Kilbane v. Director of the Department of Revenue,* 544 S.W.2d 9 (Mo. banc 1976); *Sermchief, supra.* Once the legislative intent is determined, the statute must be construed to effectuate the spirit and force of the law. *A.B. v. Frank,* 657 S.W.2d 625 (Mo. banc 1983). The court must attempt to employ a construction which will harmonize the statute with the constitution, if possible. *State ex rel. Union Electric Co. v. Public Service Commission,* 687 S.W.2d 162, 165 (Mo. banc 1985).

### 1.

The source of authority for statutory guardianship provisions is the state's parens patriae power. *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1807, 60 L.Ed.2d 323 (1979); Horstman, Protective Services for the Elderly: The Limits of Parens Patriae, 40 Mo.L.Rev. 215, 221 (1975). The primary purpose of guardianship proceedings is to protect the well-being of individuals who are not able to care for themselves. *Horstman, supra;* Borron, The Guardianship Code Revision: An Overview, 39 J. of Mo. Bar 453 (1983); *Darr v. Darr,* 287 S.W.2d 118 (Mo.App. 1956).

Historically, the notion that a declaration of incompetence is in the best interest of the affected individual has resulted in the parens patriae power being exercised in an atmosphere of procedural informality. *Horstman, supra;* Task Panel, President's Commission on Mental Health, Mental Health and Human Rights: Report of the Task Panel on Legal and Ethical Issues, (1978), reprinted in 20 Ariz.L.R. 49 (1978) (hereafter "Task Panel"). The beneficial motives behind guardianship obscured the fact that guardianship necessarily entails a deprivation of the fundamental liberty to go unimpeded about one's ordinary affairs.[5] *Horstman, supra* at 235; Borron, *supra* at 454, 455; *see also* Alexander, Premature Probate: A Different Perspective on Guardianship for the Elderly, 31 Stanford L.Rev. 1003 (1979). By contrast, while similar rights are involved in criminal proceedings, there has been no comparable facade of beneficence, and exercise of the police power has always been tempered with strict procedural safeguards.[6] *Horstman, supra.*

The procedural "deficiency" in the exercise of the parens patriae power began to receive judicial attention following two 1967 decisions by the United States Su-

---

5. For example, the ability to "acquire, enjoy, own and dispose of property" is "an essential precondition to the realization of other basic civil rights and liberties." *Lynch v. Household Finance Corp.,* 405 U.S. 538, 545, 92 S.Ct. 1113, 1118, 31 L.Ed.2d 424 (1972).

6. "Measures which subject individuals to the substantial and involuntary deprivation of their liberty contain an inescapable punitive element, and this reality is not altered by the fact that the motivations that prompt incarceration are to provide therapy or otherwise contribute to the person's well-being or reform. As such, these measures must be closely scrutinized to ensure that power is being applied consistently with those values of the community that justify interference with liberty for only the most clear and compelling reasons." F. Allen, The Borderland of Criminal Justice 37 (1964).

preme Court. In *In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court ruled that the Fourteenth Amendment's procedural due process protection applied to juvenile delinquency proceedings long considered civil in nature. The Court held that it is not the characterization of the proceedings which determines whether constitutional guarantees normally utilized only in criminal matters apply, but rather, what is at stake for the individual. *Id.* at 26, 87 S.Ct. at 1442. In *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the Supreme Court held that a mental illness commitment proceeding, "whether denominated civil or criminal," is subject to the constitutional guarantee of due process.[7] *Id.* at 608, 87 S.Ct. at 1211; *see also Kent v. United States,* 383 U.S. 541, 555, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966) ("[T]he admonition to function in a 'parental' relation is not an invitation to procedural arbitrariness.").

Following the Supreme Court's lead, courts began to scrutinize proceedings conducted pursuant to the parens patriae power more closely. *See,* for example, *Heryford v. Parker,* 396 F.2d 393 (10th Cir. 1968); *Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D.Wisc.1972); *Quesnall v. State,* 83 Wash.2d 224, 517 P.2d 568 (1974); *State ex rel. Hawks v. Lazaro,* 157 W.Va. 417, 202 S.E.2d 109 (1974); *Lynch v. Baxley,* 386 F.Supp. 378 (N.D.Ala.1974); *Doremus v. Farrell,* 407 F.Supp. 509 (D.Neb.1975); *Suzuki v. Quisenberry,* 411 F.Supp. 1113 (D.Haw.1976).

The uniform conclusion reached by these courts was that

[i]t matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. Where ... the state undertakes to act in parens patriae, it has the inescapable duty to vouchsafe due process ... [and] due process re-

quires that the infirm person ... be fully advised of his rights and accorded each of them unless knowingly and understandingly waived.

*Heryford, supra* at 396.

To its credit, however, the Missouri legislature recognized the need for procedural protection of the alleged incompetent long before courts in other states began finding fault with their own laws. Since at least 1939, Missouri law has provided for notice, the right to be present at the hearing, the right to be represented by counsel, including provisions for the appointment of counsel if an attorney did not appear on the individual's behalf, and the right to a jury trial. *See, e.g.,* §§ 447, 449, RSMo 1939; §§ 458.020, 458.060, RSMo 1949; and § 475.075, RSMo 1955. Nonetheless, as suggested by the earlier discussion of the interpretation given these rights, there remained in Missouri law a predisposition toward the beneficial aspects of guardianship—a predisposition which contained the potential for inadequate attention to due process guarantees.[8]

#### 2.

In this context, the legislature undertook its revision of our guardianship laws. We believe that the language chosen by the legislature in § 475.075 reflects a legislative intent to provide greater protection for the rights of alleged incompetents than previously existed under Missouri law. *See* Borron, *supra.*

 This does not mean, however, that we believe that the legislature intended that the rights enumerated in § 475.075.8 cannot be waived. Such a construction would deprive an alleged incompetent of her essential right and authority to make decisions regarding trial strategy, and would thereby deny the individual a vital

---

**7.** Though not discussed in *Specht, supra,* the Supreme Court had previously held that the due process requirements apply to proceedings for the appointment of a guardian. *See Simon v. Craft,* 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165 (1901).

**8.** "The most formidable abridgment of due process guarantees however, occurs where 'lip service' is paid to certain rights of the accused as a mere formality, with the consequence that any substantive protection is woefully lacking." *Quesnall, supra* at 574–575.

tool for advancing his or her best interest. Though we conclude that the legislature intended to bolster the affected individual's *rights*, we believe that it is equally true that the legislature did not intend that this must be done at the expense of the individual's best *interest*.

■ Nor is such a construction required by the Fourteenth Amendment. The Supreme Court has held that a trial by jury is neither a necessary element of the fundamental fairness guaranteed by the Due Process Clause, nor an essential component of accurate fact-finding. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971). Thus, the right to a jury trial granted by § 475.075.8(2) can be waived in a manner consistent with the requirements of the statute and waiver generally. Similarly, while due process normally requires the presence of the affected individual at the capacity hearing, this right can also be waived, provided appropriate precautions are taken. *Suzuki, supra* at 1129; *Lynch, supra* at 388–389; *Doremus, supra* at 515.

This discussion leads directly to the question of what is required by § 475.075 and the constitution for the effective waiver of the rights to a jury trial or to be present at the hearing.

■ As we have discussed, the characterization of a proceeding as "civil" or "criminal" does not necessarily determine which procedural rules apply. From a constitutional perspective, the question turns on the interests at stake for the affected individual. From a statutory perspective, the answer depends on what the statute requires when construed to effectuate the legislative intent. These perspectives join to yield the conclusion that § 475.075.8 requires that the right to a jury trial be waived affirmatively, on the record, and in a fashion similar to waiver under Criminal Rule 27.01. While the statute does not specifically call for the application of criminal procedural rules, we believe that these more stringent requirements are not only more appropriate, but were intended by the legislature.

■ As regards the right to be present at hearing, we conclude that § 475.075 requires that an alleged incompetent's presence at the hearing must also be waived affirmatively. Further, we believe that the waiver must be made on the record and must also indicate whether the right to be present has been waived because the person is mentally or physically incapable of attending, or whether the right has been waived for some other reason directly related to the individual's best interest. In the former case there must also be supporting medical evidence placed on the record. *See Suzuki, supra; Lynch, supra* at 389; *Doremus, supra.*

In a criminal context, waivers are valid only to the extent they are knowingly and intelligently made. *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); *State v. Fields*, 434 S.W.2d 507, 514 (Mo.1968). Thus, a dilemma provided by waivers in an incompetency setting is whether such a waiver, if made, is knowingly and intelligently made. Moreover, the trial court faces the difficult problem of determining the quality of the waiver without, at the same time, determining the issue of competency. And, if the alleged incompetent is incapable of making a knowing and intelligent waiver, the question remains who, if anyone, can waive such rights if such waiver is in the best interest of the alleged incompetent.

In this regard, we also recognize the dilemma facing counsel in ascertaining the client's wishes, and then determining what role he or she is required to play in protecting both the client's rights *and* interests. *See generally* D. Herman, Representing the Respondent in Civil Commitment Proceedings (1985); Perlin and Sadoff, Ethical Issues in the Representation of Individuals in the Commitment Process, 45 Law and Contemporary Problems 161 (1982); Comment, The Role of Counsel in the Civil Commitment Process: A Theoretical Framework, 84 Yale L.J. 1540 (1975) (hereafter "Comment"); Task Panel, *supra.*

There also remains the problem of ensuring that an alleged incompetent who is capable of expressing her wishes regarding a particular right has those wishes honored by counsel and presented to the court.

■ Section 475.075 strikes a balance between the alleged incompetent's rights and interests by requiring the court to appoint an attorney to represent the alleged incompetent immediately upon the filing of the petition for appointment of a guardian. The appointed attorney is required to meet with the individual and make an initial determination of the client's ability to understand and assist in the advancement of his or her interests. If the attorney concludes that the client is capable of understanding the matter in question, the attorney shall obtain from the client "all possible aid." § 475.075.3.

■ We interpret this language as requiring that, to the extent an affected individual appropriately understands what is at stake and expresses a desire to waive or exercise a particular right, that desire must be honored, even if counsel disagrees with the wisdom of the choice. Both the statute and the constitution grant the individual the right to be present at the hearing. The right to be present at the hearing necessarily includes the right to participate therein to the extent of the individual's ability. *Suzuki, supra* at 1129. Moreover, the purpose of the statutory and due process requirement of the appointment of counsel is to protect the rights and interests of the alleged incompetent. To accomplish this task it is essential that appointed counsel act as an advocate for the individual. *Quesnall, supra* at 576; *Lessard, supra* at 1097; *Lynch, supra* at 389; *Lazaro, supra* at 126; *see also* Perlin and Sadoff, *supra;* Task Panel, *supra;* Comment, *supra;* D. Herman, *supra.* The right to counsel becomes a mere formality, and does not meet the constitutional and statutory guarantee absent affirmative efforts to protect the individual's fundamental rights through investigation and submission of all relevant defenses or arguments. In addition, the implied authority of an attorney is limited to waiver of procedural or remedial matters. *Southwestern Bell Telephone Company v. Roussin,* 534 S.W.2d 273 (Mo.App. 1976); *Robinson v. DeWeese,* 379 S.W.2d 831 (Mo.App.1964). Unless expressly authorized, counsel does not have the power to waive a substantial right of a client who understands the nature of the action in which he is involved. *Robinson, supra; Bojmarito v. Southern Canning Company,* 208 F.2d 56 (8th Cir.1953); *see also Quesnall, supra* at 577.

■ With regard to a client who cannot comprehend the nature of the action, § 475.075.3 requires that counsel make these fundamental decisions for the client. Counsel is to consider all the appropriate circumstances, and act with care "to safeguard and advance the interest of the client." § 475.075.3. We construe this language to authorize counsel to exercise or waive rights granted under § 475.075.8 on behalf of an incapacitated client, when such actions will advance the best interest of the individual.

■ We believe however, that when counsel for an alleged incompetent indicates a desire to *waive* a right granted under § 475.075.8, the trial court cannot simply presume that the waiver is authorized or appropriate. Instead, the trial court must ascertain from counsel whether the decision to waive the right is the client's own choice, or a product of counsel's best judgment. In either event, the trial court is obliged to determine for itself whether the alleged incompetent in fact wishes to waive the right, and if so, whether the individual is capable of making a knowing and intelligent waiver, or alternatively, whether the individual is so disabled as to warrant counsel's acting in the individual's behalf. *See* discussion under III, B, 2 *supra.*

■ In reaching this decision, the trial court may speak directly with the alleged incompetent, or may utilize its power under § 475.075.4 to have the individual examined

by a physician or psychologist.[9] Though this duty requires the trial court to receive evidence which may also be pertinent to the ultimate issue of competency, it is a position trial courts traditionally occupy when making preliminary legal rulings in the course of litigation.[10]

### 3.

■ While the discussion thus far has focused on the interaction between the alleged incompetent, the court, and *appointed* counsel, the same principles, rules and duties apply when *private* counsel is employed. Such private counsel must engage in the same preliminary evaluation of the individual's capacity, give equal respect to the client's wishes, and vigorously advance the client's rights as appointed counsel. Such behavior is required by the constitution, the statute, and the Rules of Professional Conduct.

■ While private counsel may waive rights on behalf of a disabled client, such a waiver is entitled to no more deference than that accorded appointed counsel. The trial court is obligated to look behind the waiver to ensure that the individual's rights, interests, and desires are being advanced.

■ Section 475.075.3 makes the substitution of private counsel for appointed counsel discretionary with the trial court. The legislature's decision to make the substitution discretionary reflects a recognition that, while an individual has a right to be represented by an attorney of her choice, an alleged incompetent may be susceptible to the influence of persons whose own self-interests are foremost in their minds. Accordingly, in exercising its discretion, the trial court should not order the

withdrawal of appointed counsel upon the mere entry of appearance by private counsel. Instead, the trial court must satisfy itself that the alleged incompetent wishes to be represented by private counsel, and has the capacity to make such a choice. Alternatively, if the individual is incapable of articulating a choice, the court should be satisfied that private counsel is, and will continue to be free from outside influence. As with the waiver of substantial rights, in making such a determination the trial court is free to speak with the alleged incompetent, or request an examination by a physician or psychologist pursuant to § 475.075.-4.

■ An even more valuable guarantor of the alleged incompetent's rights however, is *appointed* counsel. Under § 475.-075.3 counsel is appointed immediately upon the filing of the petition and is required to meet with the affected individual prior to the hearing. As previously discussed, appointed counsel is required to serve as an advocate of the client's rights. This includes a duty to investigate actively the factual background which led to the filing of the petition. *Quesnall, supra* at 576; Perlin and Sadoff, *supra;* Task Panel, *supra;* Comment, *supra.* Appointed counsel should not be permitted to withdraw until he has performed this duty, as well as the statutory duty to evaluate his client's capacity and ascertain the client's desires. Having done so, upon the entry of appearance by private counsel, appointed counsel will have sufficient knowledge to alert the court to any possible conflict of interest.

■ If, after receiving appointed counsel's report, the trial court continues to have doubts about private counsel's ability to represent his client's rights and interests, the court may require that appointed

---

9. We must reiterate however, that a strategic choice different from that which the court or counsel would advise, does not, in itself, indicate incapacity to waive a right. If an alleged incompetent understands what is at stake she is as free to make potentially unwise litigation decisions as individuals whose competency is not at issue.

10. We are confident that trial courts will recall the presumption of sanity prior to the ultimate adjudication of incompetency, *Cohen v. Crumpacker,* 586 S.W.2d 370, 376 (Mo.App.1979), and that incapacity for some purposes does not mean incapacity for all purposes. *State ex rel. Sandefer v. England,* 328 S.W.2d 732, 736 (Mo. App.1959); *Tillman v. State,* 570 S.W.2d 844, 845 (Mo.App.1978).

counsel continue service as co-counsel, or as a guardian ad litem. In addition, if circumstances should arise in the course of the proceeding which require it, the trial court can require that appointed counsel reenter the case.

■ Because the "waiver" of appellant's rights under § 475.075.8(2), (8), accepted by the trial court did not meet the requirements of § 475.075 or the due process guarantee of the Fourteenth Amendment, we reverse the decision of the trial court and remand for further proceedings, including a new trial, in conformance with this opinion.

All concur.