**In re the Matter of George F. KORMAN, Incapacitated and Disabled.**

**No. 66947.**

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 16, 1996.

Ann P. Hagan, Joseph E. Maxwell, Hagan, Hamlett & Maxwell, Mexico, for appellant.

David G. Edwards, Randall O. Barnes, Jefferson City, for respondent.

Gerald Korman, Hermann, pro se.

DOWD, Judge.

Joseph W. Korman appeals on behalf of his brother, George F. Korman, from the circuit court's judgment notwithstanding the jury's verdict finding George incapacitated and disabled. We reverse and remand.

On May 14, 1993, George's nephew, Gerald Korman, initiated proceedings to have a conservator and guardian appointed for George asserting George was incapacitated and disabled. Counsel was appointed to George by the court, but private counsel was subsequently retained. George filed a motion requesting a jury trial. On February 17 and 18, 1994, a jury trial was held on the matter before the probate division of the circuit court of Gasconade County. George was present at the hearing and also testified. Following deliberation, the jury returned verdicts finding George partially incapacitated and partially disabled. The jury's findings included: "George has problems processing mathematical calculations, such as maintaining a checkbook log, to a great extent. George has difficulty analyzing financial transactions to a great extent. George has moderate short term memory loss. George has questionable judgement in his ability to care for himself unsupervised."

The court accepted and entered the verdicts. The court, however, did not enter judgment at that time. Rather, the court entered an interlocutory order naming William J. Korman (a nephew of George) temporary conservator and guardian. The interlocutory order included a required medical evaluation by doctors at the Harry S. Truman Veterans Hospital on which "the Court shall hold a review hearing concerning the status of [George]." The court stated: "This interlocutory order contemplates a 110 day period in order that suitability be determined for living arrangements & appointment of Guardian & Conservator."

Following the 110–day period of the interlocutory order, the court held a hearing. At the beginning of the hearing, the court stated

the purpose of the hearing: "This matter is before the Court today for a review of the temporary orders and the experience under those orders...." Joseph W. Korman had been permitted by the court to intervene, and all parties were represented by counsel. Witnesses, including George, were presented and testified. After the hearing, the court entered a judgment notwithstanding the verdict finding George totally incapacitated and disabled. The court appointed William J. Korman permanent conservator and guardian and further ordered George be placed in a supervised living situation such that his activities could be monitored on a 24-hour basis.

On appeal, Joseph W. Korman challenges the court's authority to enter a judgment notwithstanding the verdict in a competency proceeding. Respondent does not argue Joseph W. Korman lacks standing to challenge the competency determination of his brother. "Sections 472.160 and 472.170[, RSMo,] address appeals from probate division. In § 472.170, an appeal may be taken by a petitioner for adjudication, the person alleged to be disabled *or a relative,* any reputable citizen in the county of hearing, or attorneys for all those described persons." *Couch v. Couch,* 824 S.W.2d 65, 70 (Mo.App. 1991) (emphasis added).

▪ Competency proceedings are governed by Chapter 475, RSMo 1994. The authority supporting the statutory guardianship provisions of Chapter 475 is the state's parens patriae power. In *In re Link,* 713 S.W.2d 487 (Mo. banc 1986), our Supreme Court recognized a growing body of cases attaching due process considerations to proceedings, without regard to whether the proceedings were denominated "criminal" or "civil," stemming from the state's parens patriae power. *Id.* at 493–94. Even though the intent of guardianship is the benevolent protection of individuals who are not able to care for themselves, "guardianship necessarily entails a deprivation of the fundamental liberty to go unimpeded about one's ordinary affairs." *Id.* at 493. *Link* held the legislature revised Chapter 475 in 1983 with the intent "to provide greater protection for the rights of alleged incompetents" and to fulfill the state's duty to vouchsafe due process in the course of the state's exercise of the parens patriae guardianship power. *Id.* at 494. Our Supreme Court emphasized the necessity of construing Chapter 475 to effectuate "the spirit and force" of this legislative intent. *Id.* at 493, 495.

The 1983 revision of Chapter 475 included the "bill of rights" of individuals alleged to be incompetent:

(1) The right to be represented by an attorney;

(2) The right to have a jury trial;

(3) The right to present evidence in his behalf;

(4) The right to cross-examine witnesses who testify against him;

(5) The right to remain silent;

(6) The right to have the hearing opened or closed to the public as he elects;

(7) The right to a hearing conducted in accordance with the rules of evidence in civil proceedings, except as modified by this chapter;

(8) The right to be present at the hearing.

§ 475.075.8, RSMo 1994.

▪ In *Link,* our Supreme Court held that the constitution and legislative intent required effective waiver of the Chapter 475 right to a jury trial be in accordance with the procedures of a criminal case rather than the procedures for waiver in a civil case. *Link,* 713 S.W.2d at 495. Similarly, we hold it is contrary to the spirit and force of the legislative intent to allow the court to circumvent the right to a jury trial by the civil procedure of entering a judgment notwithstanding the verdict against the alleged incompetent. The rights conferred by § 475.075.8 were intended to be substantive protections to an alleged incompetent's "fundamental liberty" threatened by a competency proceeding. As noted in *Link,* "The most formidable abridgment of due process guarantees however, occurs where 'lip service' is paid to certain rights of the accused as a mere formality, with the consequence that any substantive protection is woefully lacking." *Id.* at 494 n. 8 (quoting *Quesnell v. State,* 83 Wash.2d 224, 517 P.2d 568, 574–75 (1973)). To allow the court to substitute its own judgment where

such fundamental rights are at risk would render the right to a jury determination hollow. No doubt exists as to a court's lack of authority to enter a judgment of guilt against a criminal defendant notwithstanding the jury's verdict of not guilty. In competency proceedings, "similar rights are involved [as] in criminal proceedings." *Link,* 713 S.W.2d at 493. A meaningful right to a jury trial similarly forecloses the court's authority to enter a judgment notwithstanding the verdict against the alleged incompetent.

■ Importantly, the legislature did not leave the courts powerless where just cause exists to believe the judgment is unsuitable. Section 475.077 grants the courts special jurisdiction to remedy the judgment in a prescribed manner.

> The court may, if just cause appears, at any time within sixty days after a judgment as to the capacity or disability of any person has been entered, set aside the judgment and order a new hearing; but if the result of the new hearing is the same as the result of the first, then the judgment shall not be set aside.

§ 475.077, RSMo 1994. This section empowers the court to order a new hearing within sixty days of judgment if just cause appears. The legislature has limited the court's jurisdiction to granting one new hearing. This provision empowers the court to remedy a perceived error in the judgment while protecting inviolate the alleged incompetent's right to have a jury determine the loss or retention of fundamental rights. It would be inconsistent with the jurisdiction provided and limitations imposed on the court in this provision to permit the court to enter a judgment against the alleged incompetent notwithstanding the jury's verdict.

■ Furthermore, the court's action also violated George's right to have a hearing held in accordance with the rules of civil procedure. The court received additional evidence concerning the factual matter determined by the jury after the jury had been dismissed. It is inferable the court supported its judgment notwithstanding the verdict on evidence not before the jury. This anomalous procedure is without precedent and does not appear sanctioned by any rule of civil procedure. *See* Rule 72.01.

■ Respondent argues that the second hearing should be characterized as a new trial at which George waived his right to a jury. Respondent stresses the participation of George at this hearing including testifying, presenting evidence, and cross-examining witnesses. This characterization, however, ignores the stated purpose of the hearing which was to review the suitability of the temporary order. It further ignores the holding of *Link* requiring waiver in the manner of a criminal case. There is no indication on the record of a waiver meeting the *Link* standards.

We reverse the judgment entered by the court and void all orders attendant to it. We remand the case to the trial court to enter a judgment consistent with the verdict. If the court finds just cause, it may order a new trial pursuant to § 475.077. Our resolution on this point makes it unnecessary to address the remaining points on appeal.

Reversed and remanded.

CRAHAN, P.J., and CRANDALL, J., concur.