

# Missouri Court of Appeals
## Southern District

### In Division

In the Matter of )
KYONG SPRUILL, An Adult, )
)
J-PIA SPRUILL, )
)
      Petitioner-Respondent, )
)
v. ) No. SD38541
) Filed: March 18, 2025
ARTHUR SPRUILL, JR., )
)
      Intervenor-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Michael V. Headrick, Associate Circuit Judge

**<u>AFFIRMED</u>**

This appeal arises from a judgment entered March 25, 2024, appointing J-Pia Spruill (J-Pia) as the guardian and conservator for an adult, Kyong Spruill (Kyong), and issuing letters to J-Pia. The appellant is Kyong's natural son, Arthur Spruill, Jr. (Arthur), who was granted leave to intervene in this action. J-Pia is Kyong's natural daughter.[1] Arthur's brief

---

[1] Because the guardian/conservator, the ward/protectee, and the intervenor all share the same surname, we refer to each individually by her or his given name for purposes of clarity. No familiarity or disrespect is intended.

presents five points for review. Because one point is moot, and none of the points are preserved for appellate review, we affirm the presumed-correct judgment.

*Factual and Procedural Background*

Due to the lack of preservation of any of the issues presented on appeal, an abbreviated summary of the facts will suffice. On December 1, 2022, J-Pia and her husband, Jesse Robinson (Robinson), filed a petition in the probate division of the Pulaski County Circuit Court asking to be appointed as Kyong's co-guardians and co-conservators. The petition alleged that Kyong was in need of a guardian and conservator because she suffered from rapidly progressing dementia. The next day, J-Pia and Robinson were appointed as Kyong's temporary co-guardians and co-conservators. On December 6th, the trial judge appointed attorney Ronda Cortesini (Cortesini) as attorney ad litem to represent Kyong.

On December 9, 2022, Kyong was personally served with a copy of the petition, written notice of the time and place of the hearing, the name of attorney ad litem Cortesini, and a list of potential witnesses. The notice specified that a hearing had been set in the probate division for 9:00 a.m. on December 21, 2022. As required by § 475.075.2, the notice also advised Kyong of the rights granted to her by § 475.075.9-.10.[2]

On December 13, 2022, Arthur filed a motion to intervene in the proceeding. His motion was granted on December 21st. He also filed a health care power of attorney and a durable power of attorney executed by Kyong on November 21, 2022. Each document designated Arthur as Kyong's agent or attorney in fact.

---

[2] All statutory references are RSMo Cum. Supp. (2018). All rule references are to Missouri Court Rules (2024).

On March 7, 2023, Arthur filed a cross-petition requesting that he be appointed as Kyong's guardian and conservator. Two weeks later, the trial court ordered that Kyong have a medical examination, as requested by Arthur. On April 20th, the trial court entered an order, with the agreement of all parties, extending its appointment of J-Pia and Robinson as temporary co-guardians and co-conservators. In the order, the judge made a factual finding that Kyong "continues to be unable to make decisions regarding her welfare and is unable to receive and evaluate information or to communicate decisions to such an extent that she lacks the present ability to meet her essential living requirements."

On July 19, 2023, J-Pia and Robinson filed a motion to set aside the health care power of attorney executed November 21, 2022, and a beneficiary deed executed on November 22, 2022, by Kyong. The beneficiary deed conveyed Kyong's home to Arthur. The motion alleged that: (1) Kyong had been diagnosed with dementia during a hospital stay in July 2022; and (2) Kyong was not of sound mind when she executed the beneficiary deed.

On January 26, 2024, the trial court entered an order, pursuant to § 472.141, applying the Civil Rules of Procedure to this adversary probate proceeding. That same day, the trial court also entered another order (Order) addressing the sole issue of Kyong's incapacity.[3] In relevant part, the Order stated:

> **NOW** on this 26th day of January 2024, the Court, by agreement of the parties
> to bifurcate this case, makes the following findings of fact and orders with
> regard to the sole issue of [Kyong's] incapacity:
> ….

---

[3] Although this Order was denominated as a judgment, it only decided the issue of incapacity and did not decide who should be appointed as Kyong's permanent guardian and conservator. Regardless of the nomenclature used, this Order was not, and could not be, a final judgment because it did not resolve all pending issues before the court. *See* ***First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.***, 515 S.W.3d 219, 221 (Mo. banc 2017) (a final judgment is defined as one that resolves all issues in the case, leaving nothing for future determination).

2.  No party demands trial by jury and the parties announce ready to proceed.
….

9.  The parties have stipulated to a finding that [Kyong] is an "incapacitated person" as defined by Sect. 475.010, RSMo.  [Kyong] is unable to meet all of her essential needs without assistance.

The trial court noted that "[t]he remaining issue of who shall be appointed permanent guardian and conservator shall be determined at trial on February 29, 2024 at 9:00 AM." After this Order was entered, no party asked the trial court to make any changes or corrections to it.

At the evidentiary hearing on February 29, 2024, Arthur appeared in person and by attorney.  Neither of them asked the trial court to vacate the Order because no record had been made and no evidence had been presented at that time.  The parties proceeded to present evidence on the issue of who should be appointed as Kyong's permanent guardian and conservator.

On March 25, 2024, the trial court entered a final judgment (Judgment) in the case. J-Pia was appointed to serve as Kyong's guardian and conservator, and letters were issued to J-Pia. On March 29th, Arthur filed a motion for new trial.  The motion alleged, *inter alia*, that:  (1) the trial court admitted hearsay evidence relating to Kyong's care; and (2) J-Pia failed to establish the onset date for Kyong's dementia.  This motion was denied by the trial court during a hearing held on April 17th.  Arthur did not file a Rule 78.07 motion to amend the Judgment.

On May 20, 2024, Arthur filed a notice of appeal with this Court.  The first appeal was assigned case number SD38529.  This appeal was dismissed as untimely.  On June 6th, this Court granted Arthur's motion for a special order allowing the late filing of his notice

4

of appeal. A second notice of appeal was filed by Arthur on June 10th. This notice appealed from the Judgment entered March 25, 2024.

On August 18, 2024, Arthur filed a Rule 74.06 motion in the trial court for relief from numerous orders, in addition to the Judgment, entered in the underlying case. This motion asked the trial court to vacate a list of 10 orders and the Judgment, all of which were decided on or before March 25, 2024. The same day the Rule 74.06 motion was filed, attorney R. Todd Wilhelmus entered his appearance in that case in the "limited capacity to move [for] relief from orders and judgments entered in the above captioned matter." That motion was overruled by the trial court at a hearing held on September 4, 2024.

On October 28, 2024, Arthur filed his appellant's brief in this Court, which included five points relied on. On February 21, 2025, J-Pia filed a suggestion of death stating that Kyong had died on February 18, 2025. The parties briefed the issue of whether any of the points on appeal were mooted by Kyong's death. That issue was taken with the case.

*Discussion and Decision*

Arthur's appeal challenges the trial court's Judgment entered March 25, 2024, appointing J-Pia as Kyong's guardian and conservator. In Missouri, the right to appeal is statutory. **Strawhun v. Strawhun**, 164 S.W.3d 536, 536 (Mo. App. 2005). There is statutory authority for this appeal pursuant to § 472.160.1(14). *See* **Int. of Z.N.B.**, 703 S.W.3d 700, 704 (Mo. App. 2024) (this statute authorizes an appeal from a judgment appointing a guardian); **In re Est. of Whittaker**, 261 S.W.3d 615, 617 (Mo. App. 2008) (this statute authorizes an appeal from a judgment appointing a conservator).

A proceeding to appoint a guardian or conservator for an adult is an adversary proceeding. **McDermot v. Doner**, 637 S.W.3d 402, 410 (Mo. App. 2021). In relevant part, § 472.141 states:

5

1. An adversary probate proceeding shall be governed by the civil code of Missouri and the rules of civil procedure; except that:

(1) Where the probate code or any other statute contains a provision prescribing practice, procedure or pleading, applicable to the pending proceeding, the provisions of the probate code or such statutes shall govern; and

(2) The provisions of chapter 509 and civil rule 55 shall not apply unless specifically made applicable by a provision in the probate code or unless the court enters an order designating all or specific provisions of chapter 509 or civil rule 55 applicable to a particular adversary probate proceeding.

§ 472.141.1(1)-(2).[4] Therefore, the Rules of Civil Procedure (except Rule 55) applied to the underlying proceeding, as the trial judge correctly ordered.

Rule 78.09 requires a party, "at the time the ruling or order of the court is made or sought, makes known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefor[.]" *Id*. As our Supreme Court explained in ***Brown v. Brown***, 423 S.W.3d 784 (Mo. banc 2014):

> Failure to do so precludes a party from obtaining appellate review of error in the trial court's ruling or order. *See Pollard v. Whitener*, 965 S.W.2d 281, 288 (Mo. App. 1998). "It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 535-36 (Mo. App. 1981) (party was precluded from raising on appeal claim that the trial court erred by appointing a guardian ad litem for the stated purpose of interviewing a child and investigating the child's reaction to an alleged female friend of the party when the party failed to call the trial court's attention to the claimed error or give the trial court the opportunity to rule on the question). *See also In re the Adoption of J.A.D.*, 417 S.W.3d 327, 328

---

[4] The 145 sections of the Civil Code of Missouri were adopted in 1943. *See* 1943 Mo. Laws 353-97. Thereafter, these sections were transferred to a number of different RSMo chapters. *See, e.g.*, § 506.010; § 506.080; § 509.380; § 510.390; § 512.040. In ***Jones v. State***, 565 S.W.3d 704, 709 (Mo. App. 2018), we held that Rule 51.05, dealing with a change of judge, applied to an SVP proceeding. ***Jones***, 565 S.W.3d at 710. That holding is correct because the Civil Code contains no section dealing with a change of judge. The portion of the ***Jones*** opinion addressing whether Rule 51.05 conflicted with §§ 508.090-.140 was unnecessary to the decision because those statutory sections are not part of the Civil Code and should not have been cited or discussed.

(Mo. App. 2013); *In the Interest of S.R.J., Jr. v. S.R.J., Sr.*, 250 S.W.3d 402, 405 (Mo. App. 2008). This requirement is intended to eliminate error by allowing the trial court to rule intelligently and to avoid "the delay, expense, and hardship of an appeal and retrial." *Pollard*, 965 S.W.2d at 288.

**Brown**, 423 S.W.3d at 787-88. Because appellate courts merely review for trial errors, there can be no review of a matter which has not been presented to or expressly decided by the trial court. **Int. of D.L.S.**, 606 S.W.3d 217, 224 (Mo. App. 2020); *see **In re S.H.P.***, 638 S.W.3d 524, 530 (Mo. App. 2021). This is so by court rule, statute, and controlling case law. **S.H.P.**, 638 S.W.3d at 530.

Arthur's brief contains the following five points relied on:

**POINT I**

The Trial Court erred entering the [Order] on January 26, 2024 because the Court exceeded its statutory authority and violated Kyong and Arthur's constitutional right to due process by entering the judgment without any evidence and/or any trial or hearing, in that neither Kyong nor Arthur received a meaningful hearing at a meaningful time or in a meaningful manner, there is no substantial evidence to support the judgment, it erroneously declares the law, and erroneously applied the law since § 475.075.9, RSMo, requires the Petitioners prove Kyong incapacitated and disabled by clear and convincing evidence, at a hearing conducted in accordance with the rules of evidence in civil proceedings (§ 475.075.10(7), RSMo) but instead the "parties" simply stipulated that Kyong was "incapacitated" and "disabled" and the court entered a judgment based solely on the stipulation.

**POINT II**

The Trial Court erred in entering the [Order] on January 26, 2024 because it violated Kyong's constitutional right to due process as guaranteed by the 14th Amendment to the U.S. Constitution and Art. I, §10 of the Missouri Constitution and/or exceeded the Court's statutory authority in that § 475.075, RSMo requires:

a. Kyong receive notice of the time, place and purpose of every hearing (§ 475.075.2, RSMo) and trial, but she received notice of only the original hearing set for 9:00 a.m. on December 21, 2022, she did not receive any notice of the "hearing" on January 26, 2024;

b. Kyong to waive her right to a trial by jury in person in open court on the record in the manner similar to Rule 27.01(b) *Link, In re, 713 S.W.2d 487, 495 (Mo. banc 1986)*, if a jury does not hear the case, but Kyong did not

7

waive her right to a trial by jury at all, she did not receive a trial or hearing by jury, or any trial or hearing at all;

       c. Kyong to waive her right to be present, in person, in open court, on the record, in the manner similar to Rule 27.01(b) *Link, Supra*., if she does not attend the trial or hearing, but she was not present in court on January 26, 2024, nor did she waive her right to be present in any manner.

## POINT III

The Trial Court erred in entering the [Order] on January 26, 2024 because the Court did not keep a record of the hearing or trial on January 26, 2024, or on multiple other dates when hearings were held, and no transcript can be provided for any of those hearings, through no fault of the parties, in that the Court was required to keep a record of all hearings and trials to permit the Appellate Court to review the proceedings.

## POINT IV

The Trial Court erred in entering the [Order] on January 26, 2024 because the [Order] is void for violating Kyong's constitutional right to due process, in that she had a statutory right to assistance of counsel (§ 475.075.4, RSMo) but she received ineffective assistance of counsel.

## POINT V

The Trial Court erred in entering its "Order on Motion to Sell Respondent's Real Estate and Personal Property" on March 25, 2024, because Kyong executed a "Beneficiary Deed" November 22, 2022 leaving her real estate to her son Arthur, in that, a conservator, with Court approval, does not have the right to alter their ward's estate plan unless the funds generated are currently needed to provide for the ward's immediate welfare, and, there was no current need to sell the real estate to provide for Kyong's immediate welfare.

All of the points challenge rulings made by the trial court on or before March 25, 2024, when the Judgment was entered.

*Mootness of Point 4*

Mootness of the controversy is a threshold question in any appellate review. ***State ex rel. Reed v. Reardon***, 41 S.W.3d 470, 473 (Mo. banc 2001). Arthur's fourth point challenges the Order of incapacity entered on January 26, 2024. The thrust of the point is that the trial court erred in deciding the question because Kyong received ineffective

8

assistance of counsel. Assuming *arguendo* that Arthur has standing to assert that claim of error – an issue we need not and do not decide – this point is moot. By statute, Kyong's guardianship and conservatorship terminated on her death. *See* § 475.083.1(5) (the authority of a guardian or conservator terminates upon the death of the ward or protectee, except to contract for the funeral and burial of the deceased); *Est. of Williams v. Williams*, 618 S.W.3d 253, 257 (Mo. App. 2021). Her death renders moot any questions relating to the appointment of a guardian or conservator. *See Norton v. McDonald*, 590 S.W.3d 450, 453 (Mo. App. 2020). A claim of ineffective assistance of the appointed counsel for a ward or protectee also is rendered moot. *See In re Duvall*, 178 S.W.3d 617, 622 (Mo. App. 2005). As the western district of this Court explained:

> [S]ince any statutory or constitutional right Ruth [a ward/protectee] may have had to effective assistance of counsel during the guardianship and conservatorship proceedings died with her, any decision by this court on that claim would not have any practical effect upon any now-existing controversy. Moreover, Ruth's death made any decision by this court as to the quality of representation she received during those proceedings, or whether Attorney Brown should have been appointed as her attorney, wholly unnecessary.

*Id*. at 622. Therefore, the ineffective-assistance point in *Duvall* was moot because it would not have any practical effect upon any then-existing controversy. *Id*. We reach the same conclusion here and hold that Arthur's Point 4 is moot.

*Points 1-5 Are Not Preserved for Appellate Review*

Rule 84.04(e), which prescribes the contents for appellate briefs, states that "[f]or each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved[.]" In Arthur's brief, the argument for each point states that the issue was preserved and refers us to legal file document # 244. This document is the Rule 74.06 motion filed by Arthur in the trial court on August 18, 2024, which asked the trial court to vacate 10 different orders and the

9

Judgment that were entered on or before March 25, 2024. It was not filed in the trial court until after Arthur filed his second notice of appeal with this Court. The argument for Point 3 also contains a citation to the transcript from the hearing held September 4, 2024, at which the Rule 74.06 motion was argued. There is no reference in Arthur's appellate brief showing that any of the claims of error were ever presented to, or decided by, the trial court while the case was pending there.

Arthur's Rule 74.06 motion was filed in the trial court after its Judgment became final and the time for filing after-trial motions had expired. Therefore, that motion is not a part of this appeal. When a Rule 74.06 motion is filed under those circumstances, it creates a new proceeding that must culminate in the entry of a separate judgment deciding the issues presented. *See, e.g.*, **C.B. v. G.B.**, 701 S.W.3d 669, 672 (Mo. App. 2024) (noting that the circuit court issued a "final judgment" denying a party's Rule 74.06(b) motion); **Bowlin v. Stevens**, 694 S.W.3d 579, 582 n.5 (Mo. App. 2024) (Rule 74.06 proceedings are separate proceedings that produce separate and appealable judgments); **Yanuzzi v. Dir. of Revenue**, 14 S.W.3d 618, 620 (Mo. App. 1999) (noting that a judgment denying a Rule 74.06(b) motion was a separate, appealable judgment).

Another procedural error is obvious after reviewing what happened with respect to Arthur's Rule 74.06 motion. Upon the filing of a notice of appeal after a judgment has become final, a trial court loses almost all jurisdiction over a case, except to exercise functions of a purely ministerial or executive nature. **Sanford v. CenturyTel of Missouri, LLC**, 490 S.W.3d 717, 721 n.3 (Mo. banc 2016). The trial court loses the jurisdiction to exercise any judicial functions. **Yust v. FasterHouse, LLC**, 699 S.W.3d 766, 771-72 (Mo. App. 2024). Any substantive rulings made by a trial court when it lacks jurisdiction to do so are a nullity. *Id.*; *see also* **Adams v. Crane**, 652 S.W.3d 402, 407 (Mo. App. 2022).

10

During the hearing on September 4, 2024, at which the Rule 74.06 motion was argued, the trial court lacked jurisdiction to make any substantive changes in its prior orders or the judgment. While this appeal is pending, Rule 74.06(a) may only be used to enter a *nunc pro tunc* order to correct a clerical error. *Reynolds v. Reynolds*, 109 S.W.3d 258, 267-68 (Mo. App. 2003). A *nunc pro tunc* order may not order that which was not already done, or change or modify the action which was taken. *Id*.

"The judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous." *O'Connell v. Deering*, 631 S.W.3d 649, 652 (Mo. App. 2021). Arthur's preservation statements in his brief fail to show that he presented any of the alleged errors described in his points to the trial court and obtained an adverse ruling on them. Therefore, none of those alleged errors are preserved for appellate review. *See* Rule 78.09; *Brown*, 423 S.W.3d at 787-88. Accordingly, Points 1-5 are denied. *See, e.g.*, *Montgomery v. Coreslab Structures (Missouri), Inc.*, 697 S.W.3d 766, 774 (Mo. App. 2024) (denying a point that was not preserved for appellate review); *Brown v. Haley*, 687 S.W.3d 27, 36-37 (Mo. App. 2024) (same holding).[5]

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

BECKY J. WEST, J. – CONCUR

---

[5] Assuming *arguendo* that Point 4 is not moot, we still would not reach the merits of that point because it is not preserved for appellate review.