In the Interest of T.M.E., Plaintiff;

Juvenile Officer, Respondent,

Missouri Division of Family
Services, Respondent,

v.

K.L.E. (Mother), Appellant,

J.F.E. (Father), Appellant.

Nos. WD 64787, WD 64788.

Missouri Court of Appeals,
Western District.

Aug. 23, 2005.

Mark A. Goodwin, Richmond, for Appellant K.L.E.

James Armin Rust, Richmond, for Appellant J.F.E.

J.D. Gorham, Richmond, attorney and Guardian ad Litem for Plaintiff T.M.E.

James Carey Thompson, Richmond, for Respondent Juvenile Officer.

Gary Lee Gardner, Asst. Attorney General, Jefferson City, for Respondent Missouri Children's Division.

Before VICTOR C. HOWARD, P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

JAMES M. SMART, JR., Judge.

Appellants K.L.E. and J.F.E. appeal the juvenile court's judgment terminating their parental rights to their daughter, T.M.E. They assert various points of error, most of which relate to the sufficiency of the statutorily required findings. We affirm.

## Background

T.M.E. (Daughter) was born to K.L.E. (Mother) and J.F.E. (Father) in August 2002. In February 2003, when Daughter was almost six months old, she was admitted to Children's Mercy Hospital, because, among other things, she was having difficulty breathing. Daughter was placed in protective custody with the Division of Family Services (DFS) after doctors discovered multiple fractures throughout her body.

DFS, the Ray County Sheriff's Department, and the State Technical Assistance Team (STAT) began a child abuse investigation. Six months later, Father pleaded guilty to felony child abuse. He later pleaded guilty in another jurisdiction to first-degree assault on Daughter while in that jurisdiction. Father was sentenced to concurrent ten-year prison terms on each conviction. Mother pleaded guilty to first-degree child endangerment for failing to protect Daughter from the abuse. She was sentenced to five years' probation.

Daughter continued in protective custody while DFS worked with Mother on a plan aimed at reunification. The parents originally were permitted weekly visitation with their daughter, but that was terminated following Mother's guilty plea. DFS sent Father notes from support team meetings and copies of treatment plans, but offered him no reunification services after he was incarcerated. About thirteen months after DFS took Daughter into protective custody, the Juvenile Officer filed a petition to terminate both parents' parental rights. A bench trial was held. Both parents were present and represented by counsel.

The court heard evidence from a pediatrician and child abuse expert at Children's Mercy Hospital who examined the child, a child abuse investigator with STAT, DFS employees who worked with the parents on reunification, and Mother's mental health counselor. Mother and Father also testified. The court took judicial notice of the underlying juvenile case record and the parents' criminal cases.

The trial court terminated Father's parental rights based on his felony convictions for inflicting serious bodily injury on the child and the court's own findings of abuse. The court terminated Mother's parental rights based on findings of abuse, neglect, and failure to rectify harmful conditions. The court found that the terminations were in the child's best interests and were "reinforced" by the public policy underlying section 211.038.

Both parents appeal.

## Standard of Review

Before terminating parental rights, the trial court must find by clear, cogent, and convincing evidence that one or more grounds for termination exists under subsections 2, 3, or 4 of section 211.447, and that termination is in the child's best interests. § 211.447.5; *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). Clear, cogent, and convincing evidence is that which instantly tilts the scales in favor of termination when weighed against the evidence in opposition and leaves the fact finder with the abiding conviction that the evidence is true. *In the Interest of A.S.W.*, 137 S.W.3d 448, 453 (Mo. banc 2004). One ground, if properly pleaded and proven, is sufficient to support a judgment for termination of parental rights when termination is in the best interest of the child. *S.M.H.*, 160 S.W.3d at 362.

Whether statutory grounds have been proven is reviewed pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), under which we must affirm the judgment unless no substantial evi-

dence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *In the Interest of P.L.O.*, 131 S.W.3d 782, 788–89 (Mo. banc 2004). We review the court's best-interest determination for an abuse of discretion. *Id.* at 789. We defer to the trial court on questions of witness credibility and view conflicting evidence in the light most favorable to the judgment. *In the Interest of K.A.W.*, 133 S.W.3d 1, 11–12 (Mo. banc 2004).

### Findings of Abuse and Neglect

The primary reasons for termination as to both Mother and Father related to the physical abuse of the child. There was ample evidence of abuse in the record and the testimony presented at trial. Dr. Michael Moran, a pediatrician and expert on child abuse, testified about his examination of Daughter at Children's Mercy. He discussed the nature and extent of her injuries. The doctor stated that Daughter's breathing difficulties when she was admitted to Children's Mercy raised concerns about a possible brain injury. X-rays revealed numerous fractures of various ages in her head, arms, ribs, and legs. She also had bruising in her mouth. According to Dr. Moran, Daughter's injuries were considered non-accidental and were consistent with acts of child abuse. He discussed the causes of the injuries, some of which he described as "snap-type" fractures. He opined that the fractures in her right forearm were "healing fractures" caused by a "force" coming across the forearm bone. The child had five fractures on the right side and three fractures on the left side of her ribs where the ribs join the sternum. These would have been caused by acute compression of the chest or a blow to the chest. She also had sustained an elongated fracture on the left side of her skull caused by "blunt force trauma." Dr. Moran said Daughter had several fractures near the joints in her arms and legs that were the result of having been shaken violently. Many of Daughter's fractures were older and had gone untreated. She would have been in extreme pain as a result of these injuries. This would have been evident to Mother or anyone who handled her.

STAT investigator Dan Stewart testified about his interviews with Mother and Father. Mother told him that she thought Father might have treated Daughter too roughly. In Mother's written statement, she admitted that the child cried more than usual after being left with Father. Mother told Stewart she had confronted Father more than once, but she never reported any suspicions to any healthcare providers who saw the child prior to DFS intervention. Mother frequently alluded to the possibility of abuse by Father, in her interview, but then consistently backed away from it. For example, Mother stated that Father had compressed the child's chest, but then said she thought it was to get Daughter to breathe.

While Daughter was in DFS custody, Mother and Father both pleaded guilty to felonies associated with her abuse. Father pleaded guilty in Ray County to the class B felony of child abuse, § 568.060. The allegation was that Father committed cruel and inhuman punishment upon Daughter by striking her with his hand and/or shaking her, causing her multiple rib fractures and serious emotional injury. He later pleaded guilty in Jasper County to the class A felony of first-degree assault, § 565.050. The allegation there was that Father caused serious physical injury to Daughter by striking and shaking her. Mother pleaded guilty in Ray County to endangering the welfare of a child in the first-degree, § 568.045, a class D felony. The allegation against Mother was that she created a substantial risk to the life,

body, and health of Daughter by failing to protect her from acts of physical abuse inflicted by another, by misrepresenting to medical personnel the nature and extent of the child's injuries, and by overmedicating her.

■ The court terminated Father's parental rights based on his two separate felony convictions for inflicting serious bodily injury on the child. *See* § 211.447.2(3)(d).[1] The court also based termination on its own finding that Father had committed severe and recurrent acts of physical abuse and repeatedly inflicted serious bodily injury on the child. *See* § 211.447.4(2)(c).

Section 211.447.4(2) permits the juvenile officer or DFS to file a petition to terminate parental rights when it appears that the child has been abused or neglected. The statute requires the court, in determining whether to terminate under that subdivision, to consider and make findings as to four factors.[2] The court is required to make findings as to all the factors, but a termination based on abuse may be justified by the existence of only one factor. *In the Interest of J.M.N.*, 134 S.W.3d 58, 68 (Mo.App.2004); *In the Interest of A.S.O.*, 52 S.W.3d 59, 67 (Mo.App.2001).

Here, the court made findings on all four factors with regard to Father. The court found a basis for termination only in paragraph (c), severe and recurrent acts of physical abuse. The court further found that termination was in the child's best interest, in that she should not be returned to Father's care to risk further abuse.

■ As with Father, the court found sufficient grounds for termination of Mother's parental rights under section 211.447.4(2). The court made the required findings on all the factors and found grounds to terminate Mother's parental rights under paragraphs (c), severe or recurrent acts of physical abuse, and (d), repeated or continuous failure to provide for the child. The court found no grounds under paragraphs (a) or (b).

Pursuant to paragraph (c), the court found that the child had been the victim of severe acts of physical abuse by another under circumstances indicating that Mother knew or should have known that such acts were being committed. The court found that Mother had actual knowledge of the abuse, and acknowledged such in her guilty plea. The court concluded that Mother's failure to protect the child provides a legal basis to consider termination of her parental rights. The court's find-

1. That subdivision provides in relevant part that a petition to terminate parental rights shall be filed by the juvenile officer or the division when "[a] court of competent jurisdiction has determined that the parent has ... [c]ommitted a felony assault that resulted in serious bodily injury to the child or to another child of the parent." § 211.447.2(3)(d).

2. Those section 211.447.4(2) factors are:
(a) A mental condition ... which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing nec-

essary care, custody and control of the child and which cannot be treated ...;
(c) A severe act or recurrent acts of physical ... abuse toward the child ... by the parent ... or by another under circumstances that indicate the parent knew or should have known that such acts were being committed toward the child ...; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education ... or other care and control necessary for the child's physical, mental, or emotional health and development[.]

ings are supported by the evidence. The child had numerous fractures of varying ages throughout her body. These fractures would have caused extreme pain, which would have been evident to anyone who handled her.

There was also additional evidence that Mother could not be counted on in the future to protect her daughter from potential abuse. She was, at the time of trial, living with a boyfriend at the residence of her boyfriend's father. The boyfriend's father was known to DFS to have a "history" of maltreatment of children.

The court found that Daughter also had been neglected within the meaning of paragraph (d) in that Mother had shown repeated or continuous failure to provide for the child's physical, mental, or emotional health and development. This finding was supported by the juvenile case record and the evidence adduced at trial.

DFS Caseworker Misty Williams testified that Mother had been unsuccessful in achieving her service plan goal of maintaining stable employment and appropriate housing. At the time of trial, Mother remained unemployed with no assets or income with which to support herself or her child.

The caseworker also said that Mother did not request additional visitation. Mother did not offer any support for the child while the child was in DFS custody. Although DFS informed Mother that she could contact DFS at any time, Mother neglected to request any information about her child's well-being for over a year. Mother acknowledged her failure to contact DFS. Her reason was that she did not think DFS would tell her anything. She also said she was never asked by DFS to pay child support for Daughter.

Counselor William Campbell, who conducted twenty-two counseling sessions with Mother, testified that while Mother had made some progress in getting back on her feet and being a productive individual, she had "slipped some" in establishing a stable home environment and steady employment. He could not estimate when Mother would demonstrate stability in those areas.

The court found that Mother is physically able to provide support—and would be financially able to do so had she maintained a better employment history—but that "she had taken no steps, nor does it appear that she will be taking steps, to be in a position to provide for the minor child." The support provided even when the child was in the parents' custody was sporadic, with numerous job changes and frequent changes of residence. The court also found that Mother did have the opportunity to request information on the child and to offer support for the child. The fact that Mother went over a year without doing so shows a failure to provide care for the minor child's physical, mental or emotional health and development, the court stated. The court concluded that it is in Daughter's best interests that Mother's parental rights be terminated.

The court found, with regard to both Mother and Father, that the decision to terminate was "reinforced" by section 211.038. That statute, enacted in 2004, prohibits the court from reuniting a child with a parent who has pleaded guilty to certain felonies, including sections 568.060 (child abuse) and 568.045 (endangering the welfare of a child). The court stated that while the statute does not specifically refer to termination of parental rights, it shows a strong public policy against returning a severely and criminally abused child to the parents involved in the abuse.

The trial court properly terminated the parents' rights under section 211.447.4(2). The court made the appropriate statutory

findings as required by that subdivision. The court's findings of abuse and neglect are supported by clear, cogent and convincing evidence. We find no abuse of discretion in the court's judgment that termination is in the child's best interests.[3]

### Rehabilitation

■ Father and Mother both argue that the court erred in terminating their parental rights under section 211.447.4(2) because the Juvenile Officer failed to submit sufficient evidence to prove that each could not be "rehabilitated" to perform his or her parental duties. Citing *In the Interest of K.A.W.*, 133 S.W.3d 1 (Mo. banc 2004), both argue that the court erred in failing to make findings as to their predicted future conduct before terminating their parental rights.

Father's sole point on appeal challenges the Juvenile Officer's failure to present evidence of Father's conduct or state of rehabilitation at the time of termination. Father relies on the following quotation for support:

Courts have required that *abuse or neglect* sufficient to support termination *under section 211.447.4(2)* be based on conduct at the time of termination, not just at the time jurisdiction was initially taken. Similarly, courts have required that *a failure to rectify* sufficient to support termination *under section 211.447.4(3)* be based on a determination that conditions of a potentially harmful nature continued to exist as of the termination, rather than a mere finding that conditions that led to the assumption of jurisdiction still persisted.

*K.A.W.*, 133 S.W.3d at 10 (internal citations omitted) (emphasis added). Father's reliance on this language is misplaced. The court specifically stated that it was not relying on a "failure to rectify" as a basis for termination of Father's parental rights. Section 211.447.4(3) was not one of the grounds.

Father also argues, based on this quote, that the court could not terminate his rights under section 211.447.4(2) without evidence as to whether he was amenable to rehabilitation or willing to cooperate with DFS in reunifying at the time of termination. Father also argues that he never

---

3. Section 211.447.6 requires the court, when terminating under subdivisions (2) and (3) of subsection 4 to make findings on the listed factors "when appropriate and applicable." Those factors, often referred to as the "best interests" factors, are:
    (1) The emotional ties to the birth parent;
    (2) The *extent to which the parent has* maintained regular visitation or other contact with the child;
    (3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody *of the division . . .;*
    (4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
    (5) The parent's disinterest in or lack of commitment to the child;
    (6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
    (7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.
While the judgment does not specifically list the court's findings as to these factors, the court's determinations with regard to most of these factors can be found therein. Neither Mother nor Father raises the issue of any lack of specific findings under subsection 6. Moreover, in view of Section 211.038, RSMo. 2004 Supp., it was not an abuse of discretion to conclude that termination was in the child's best interests.

abused the child in the first place. Father essentially argues that the Juvenile Officer was required to submit evidence to prove that Father would continue to physically abuse his daughter if given the chance.

When a parent has committed severe and recurrent acts of abuse toward his child, logic and life experiences dictate the presumption that an unreformed parent will continue to be a threat to the welfare of the child for the foreseeable future. The abuse here was severe and recurring. It was not isolated to a particular incident or time. There are no factors presented here that would suggest that Father has repented and reformed or otherwise recovered from the tendency to the moral lapses and the lack of self-control that allowed him to give vent to his rage against his helpless daughter. There is a legitimate presumption under these circumstances, in the absence of contrary evidence, that Father is not rehabilitated in his ability to function as a parent.

*K.A.W.* is not contrary. In that case, the court, in reviewing the record as to the mother's efforts to place her children for adoption, found there was no evidence that the proposed placements were abusive or that they indicated a likelihood of future harm. *Id.* at 13. The only expert witness, one hired by DFS, found that the mother's difficulties in parenting were not abnormal, that she appeared to be an adequate parent, and that he saw "no evidence that her parental rights should be terminated." *Id.* at 13–14. There was also evidence that Mother complied with the service plan and that the services helped. *Id.* at 14. The court thus held the trial court erroneously terminated parental rights. In this case, in contrast, Father's rights were terminated for severe and recurrent acts of physical abuse which caused cruel and prolonged suffering to the child. In such a case, there is no need to discuss "whether

additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time."

■ Mother also contends that the court erred in terminating her parental rights under section 211.447.4(2) because the Juvenile Officer failed to prove that she could not be rehabilitated to perform her parental duties. She argues that the trial court erred in failing to make findings on her past conduct and her predicted future conduct. Citing *K.A.W.*, 133 S.W.3d at 9–10, Mother says a parent's past behavior can support termination "only if it is convincingly linked to predicted future behavior." Mother also says the court failed to make findings as to how her instability in residence and employment has affected or will affect her ability to care for Daughter, citing *In the Interest of C.F.C.*, 156 S.W.3d 422 (Mo.App.2005).

We disagree. The court made appropriate findings as to Mother's past behavior and predicted future conduct relevant to abuse and neglect, and those findings were supported by the evidence. Mother's relevant behavior is her failure to protect her daughter from abuse and her failure to provide for the child when physically able to do so.

The court also made findings about Mother's predicted future conduct in these areas. For example, the court specifically found that Mother "had taken no steps, *nor does it appear that she will be taking steps*, to be in a position to provide for the minor child." (Emphasis added.) The court found little likelihood that potentially harmful living conditions *will be soon remedied* so that the child can be returned to Mother *in the near future*. Mother was without means of providing a stable and safe home. Nor is there any evidence that she would correct her behavior in the future to provide a safe home environment

for the child. The evidence of Mother's inability or unwillingness to effectively parent was "convincing."

Neither of the cases cited by Mother involved the types of severe and recurring acts of physical abuse that Mother permitted to take place without intervening. *C.F.C.* involved "failure to rectify" and various forms of neglect, none of which involved severe physical abuse of the child. *See* 156 S.W.3d at 428–29. In *K.A.W.*, as already discussed, there were no severe and recurrent acts of physical abuse, and no criminal failures to protect the child.

Finally, as the court noted, in section 211.038 the General Assembly has removed from the court the discretion to reunite Mother or Father to child because they have both been convicted of offenses precluding reunification. All of these factors left the court with no reasonable alternative but to terminate parental rights.

### Mother's Guilty Plea Admissions

██ Mother argues in Point III that the court erred in basing its decision to terminate under section 211.447.4(2) on her admissions in her criminal trial. She complains that neither the factual basis for the plea nor her admissions were made a part of the record in this case. According to Mother, the following finding shows that the court relied on her factual admissions at her plea hearing:

> [Mother] acknowledged her knowledge of the physical abuse in her guilty plea to the felony of endangering the welfare of a child which contained an element that she "acted in a manner that created a substantial risk to the life, body and health of" the minor child. Mother further acknowledged her knowledge of the physical abuse when she pled guilty to the felony of endangering the welfare of a child which contained an element that she "misrepresented to medical person-

nel the nature and extent of the child's injuries."

Mother says the court also used the factual basis of her plea when ruling under section 211.447.4(3)(a) that she admitted to "overmedicating the child." She says the court erred in its rulings because the factual admissions she made at her guilty plea were not made a part of the record in this case and, thus, were improperly used against her. Mother cites no authority to support her contention that the factual basis for a guilty plea in a related felony prosecution must be admitted into evidence before a termination court can properly consider it. According to Mother, only a certified copy of her felony conviction was admitted into evidence and she testified only that she had entered a guilty plea, but went no further.

We disagree with the underlying premise of Mother's argument. The findings about which Mother complains are based on the actual charges to which she pleaded guilty. The trial court took judicial notice of her felony conviction for child endangerment, which included certified copies of the information, the guilty plea, and the sentence and judgment. Those documents were made a part of the record in this case. The charge in the information to which Mother pleaded guilty alleged that she

> committed the Class D Felony of ENDANGERING THE WELFARE OF A CHILD IN THE FIRST DEGREE, ... in that ... the defendant, either acting alone or knowingly in concert with others, *acted in a manner that created a substantial risk to the life and body and health of T.E.* ... by failing to protect T.E. from acts of physical abuse inflicted by another, *by misrepresenting to medical personnel the nature and extent of the child's injuries and by over medicating the child.*

(Emphasis added.) Mother testified at the termination hearing that she had pleaded guilty, that the conviction was for the events surrounding Father's abuse of Daughter, and that her plea was voluntary. There is nothing in the court's judgment with regard to this issue that is not included in the record of this case. Point denied.

### Failure to Rectify Harmful Conditions

■ The trial court found another ground to terminate Mother's parental rights in her failure to rectify harmful conditions, pursuant to section 211.447.4(3). Mother's first and second points relate to the sufficiency of the court's findings under that subdivision.

When a court finds grounds to terminate under subdivision (3), it is required to make findings on the four factors listed in paragraphs (a-d) of that subdivision. Paragraph (a) requires specific findings on "the terms of the social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms." § 211.447.4(3)(a). Paragraph (b) mandates findings on the "the success or failure of the efforts of the juvenile officer [or] the division . . . to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child." § 211.447.4(3)(b). In identical findings of fact under (a) and (b), the court discussed the services DFS had provided and Mother's participation in those services, including her successes and failures in achieving her goals. The court concluded that paragraphs (a) and (b) supported termination, but found no basis for termination under paragraphs (c), a mental condition, or (d), a chemical dependency.

Mother says in Point I that the court's findings as to paragraph (a) do not sufficiently specify the terms of the plan or the extent to which she complied with the terms. She argues in Point II that the court's findings as to paragraph (b) also are inadequate. Mother also finds fault with the court making verbatim findings as to both (a) and (b).

We acknowledge that the court's findings as to this ground for termination are not a "model for future judgments." *See A.S.O.*, 52 S.W.3d at 65. Nevertheless, we conclude that the court's findings are "minimally sufficient" to explain the court's rationale, *see id.*, and "specific enough" to assure us that the court considered the required factors in its decision to terminate, *see C.F.C.*, 156 S.W.3d at 427. Sufficient evidence supports this ground for termination.

■ Even if the court made inadequate findings on Mother's failure to rectify under section 211.447.4(3), it would not require reversal in this case. In the case Mother primarily relies upon, *A.S.O.*, 52 S.W.3d 59, the court's failure to make the appropriate findings on "failure to rectify" was critical because it constituted the only legitimate basis for termination there. Here, the court terminated Mother's rights on the grounds of abuse and neglect, pursuant to section 211.447.4(2). The failure to rectify was an additional ground of termination. Where a trial court finds multiple statutory grounds for termination, the appellate court need not decide whether sufficient evidence supports each finding. *In the Interest of J.K.*, 38 S.W.3d 495, 499 (Mo.App.2001). We will affirm the trial court's judgment if termination is supported under any of the subdivisions of section 211.447.4, and if termination is in the child's best interests. *K.A.W.*, 133 S.W.3d at 16. We have already determined that the court properly terminated Mother's parental rights under subdivision (2) of section 211.447.4. One ground is sufficient to support termination of paren-

tal rights. *S.M.H.*, 160 S.W.3d at 362. It is clear that termination is in the child's best interests, regardless of the findings on "failure to rectify." Mother's Points I and II are denied.

## Conclusion

For the foregoing reasons, the judgment is affirmed.

HOWARD and NEWTON, JJ., concur.