In the Matter of, Mary Lou SCHIEBER, Protectee,

v.

Mary Lou SCHIEBER, Appellant,

Michael Schieber, Respondent.

No. WD 70095.

Missouri Court of Appeals, Western District.

Sept. 29, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 2009.

Application for Transfer Denied Dec. 22, 2009.

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

Steven M. Petry, for Protectee Mary Lou Schieber.

Scott W. Ross, for Appellant Mary Lou Schieber.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

VICTOR C. HOWARD, Presiding Judge.

Mary Lou Schieber appeals from the trial court's order entered after an annual review hearing regarding Mrs. Schieber's status and from the trial court's order granting a motion to disqualify Mrs. Schieber's private counsel. On appeal, Mrs. Schieber claims the trial court erred in: (1) finding that Mrs. Schieber's presence at the hearing on the motion to disqualify was unnecessary; and (2) granting appointed counsel's motion to disqualify Mrs. Schieber's private counsel on the grounds that she did not have the capacity to retain private counsel and that private counsel had a conflict of interest. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

In January 2007, Mary Lou Schieber's son, Michael Schieber, filed an application for appointment as the guardian and conservator of his mother. Mrs. Schieber's sister, Karen Hebert, filed an application for appointment as a limited guardian and limited conservator. The trial court appointed attorney Scott Ross to represent Mrs. Schieber in the proceedings. Following a hearing on the applications, the trial court found that Mrs. Schieber was totally incapacitated and totally disabled and appointed Mr. Schieber as the guardian and conservator of his mother. Ms. Hebert later filed a motion to remove Mr. Schieber as the guardian and conservator, and the trial court dismissed her motion for

lack of standing.[1]

On July 15, 2008, the trial court set a hearing for August 1, 2008, during which it would conduct its annual review of Mrs. Schieber's status. Prior to the hearing, attorney Steven Petry filed an entry of appearance on behalf of Mrs. Schieber. Mr. Ross filed a motion to disqualify Mr. Petry, arguing that Mr. Petry had a conflict of interest in that he had represented Ms. Hebert in connection with her motion to remove the guardian and conservator and that the prior adjudication declaring Mrs. Schieber to be totally incapacitated and totally disabled established that she did not have the capacity to retain private counsel.

At the hearing on the motion to disqualify, Mr. Petry first brought up an issue regarding whether Mrs. Schieber's presence at the hearing was necessary. Mr. Petry informed the court that he had sent an e-mail to Mr. Schieber's attorney, John Baker, requesting that he make Mrs. Schieber available to be picked up by Mr. Petry and taken to the hearing. Mr. Schieber did not make arrangements for Mrs. Schieber to attend the hearing, and an attorney for Golden Living Center, where Mrs. Schieber resided, informed Mr. Petry that, absent an order from the court compelling them to transport Mrs. Schieber to court, the facility would not make arrangements for Mrs. Schieber to attend the hearing. Additionally, Mr. Ross stated that when he went to the facility to speak with Mrs. Schieber about attending the hearing, Mrs. Schieber told him that she did not want to speak with him. The trial court found that Mrs. Schieber's presence was not required at the hearing on the motion to disqualify.

In response to Mr. Ross's motion to disqualify, Mr. Petry contended that in order for the trial court to determine whether Mrs. Schieber had the capacity to retain counsel, the court was required to speak directly to Mrs. Schieber. Therefore, Mrs. Schieber's presence was required at the hearing on the motion to disqualify. Mr. Petry further claimed that there was no conflict of interest created by his representation of both Ms. Hebert and Mrs. Schieber because Ms. Hebert's motion seeking the removal of the guardian and conservator was filed on behalf of Mrs. Schieber. The trial court found that, because Mrs. Schieber was previously adjudicated totally incapacitated and totally disabled, she did not have the capacity to hire private counsel. The court also found that Mr. Petry's prior and continuing representation of Ms. Hebert constituted a conflict of interest. Therefore, the court granted the motion to disqualify Mr. Petry from representing Mrs. Schieber, and Mr. Ross represented Mrs. Schieber at the status review hearing. After the trial court entered its judgment relating to the status review hearing, Mr. Petry filed an appeal challenging the trial court's grant of Mr. Ross's motion to disqualify.

### Standard of Review

■ "A court-tried probate case is reviewed under the standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *In re Estate of Schooler*, 204 S.W.3d 338, 342 (Mo.App. W.D.2006). Therefore, the appellate court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Mur-*

1. Ms. Hebert appealed the trial court's decision, and this court dismissed the appeal, finding that Ms. Hebert lacked standing to appeal the dismissal of her motion to remove Mr. Schieber as guardian and conservator. *See Schieber v. Schieber*, 289 S.W.3d 256 (Mo. App. W.D.2009).

*phy,* 536 S.W.2d at 32. However, "Section 475.075.3 makes the substitution of private counsel for appointed counsel discretionary with the trial court." *In re Link,* 713 S.W.2d 487, 497 (Mo. banc 1986).

## Discussion

■ We first assess Mr. Ross's motion to dismiss the appeal. Mr. Ross argues that although the notice of appeal purports to appeal from the trial court's order entered after the status review hearing, all of the points relied on refer only to the trial court's ruling on the motion to disqualify. Mr. Ross asserts that the trial court's final judgment was its ruling on the status review hearing and that the order sustaining the motion to disqualify was not a final, appealable order.

■ "Generally, orders of the probate court are interlocutory and are not subject to appeal until final disposition of the matters before the court." *In re Estate of Standley,* 204 S.W.3d 745, 748 (Mo.App. S.D.2006). Here, Mr. Petry waited to file the notice of appeal until after the court had entered its judgment in connection with the status review hearing, which Mr. Ross asserts is the final judgment. If the trial court's decision on the motion to disqualify could not be appealed directly or appealed after the status review hearing judgment, such a ruling would, in effect, be unappealable. That is not the case, as evidenced by appellate cases considering assertions of error relating to a trial court's grant of a motion to disqualify private counsel. *See, e.g., In re Conservatorship Estate of Moehlenpah,* 763 S.W.2d

249 (Mo.App. E.D.1988). Thus, the motion to dismiss the appeal is denied.[2]

■ In his first point on appeal, Mr. Petry contends that the trial court erred in finding that Mrs. Schieber's presence at the hearing on the motion to disqualify was not required. In support of his argument that Mrs. Schieber's presence was required, Mr. Petry cites only *Link* and section 475.075, RSMo 2000. Section 475.075.8(8) provides that when a petition for the appointment of a guardian or conservator is filed, the person alleged to be incompetent has the right to be present at the hearing on capacity or disability. The court in *Link* established the proper method by which the right to be present at the hearing could be waived. *See* 713 S.W.2d at 495.

The case and statute cited by Mr. Petry involve only the alleged incompetent's rights in connection with a hearing on capacity or disability, and include nothing regarding the right to be present at a hearing on a motion to disqualify or a status review hearing.[3] In the absence of any authority regarding a right to be present at a hearing on a motion to disqualify private counsel, we find that the trial court did not err in finding that Mrs. Schieber's presence at the hearing was not required.

■ In Mr. Petry's remaining points on appeal, he contends that the trial court erred in granting Mr. Ross's motion to disqualify private counsel on the grounds that Mrs. Schieber did not have the capacity to retain private counsel and that Mr. Petry had a conflict of interest due to his

2. Another motion was filed in this case by Mr. Petry, in which he asks the court to strike Mr. Ross's brief, appendix, and supplemental legal file on the ground that they include references to matters outside the record. As the matters referred to do not factor into our

decision in this case, the motion to strike is denied.

3. We note that Mrs. Schieber was present for and testified during the status review hearing that took place after Mr. Petry was disqualified.

prior and continuing representation of Ms. Hebert.

In his brief, Mr. Petry notes that he does not dispute that section 475.075.3 grants the trial court discretion in determining whether to substitute private counsel for appointed counsel. According to the *Link* court's interpretation of section 475.075, the trial court's discretion regarding the substitution of private counsel "reflects a recognition that, while an individual has a right to be represented by an attorney of her choice, an alleged incompetent may be susceptible to the influence of persons whose own self-interests are foremost in their minds." *Link*, 713 S.W.2d at 497. Therefore, "the trial court must satisfy itself that the alleged incompetent wishes to be represented by private counsel, and has the capacity to make such a choice." *Id.* However, if the individual does not have the capacity to make such a choice, "the court should be satisfied that private counsel is, and will continue to be free from outside influence." *Id.* In making its determinations, "the trial court is free to speak with the alleged incompetent, or request an examination by a physician or psychologist." *Id.*

Mr. Petry first argues that the trial court was required to question Mrs. Schieber directly in order to determine if she had the capacity to retain private counsel. However, the court in *Link* merely stated that the trial court is free to take such action when ascertaining whether the individual has capacity to retain private counsel. Mr. Petry also cites *Moehlenpah* in support of his contention, but in that case, the court did not mandate direct questioning but, rather, held that a trial court's direct questioning of the individual did not violate his constitutional or statutory rights. *See* 763 S.W.2d at 257.

Additionally, it is important to note that the proceedings in this case were at a different stage than those in *Link* and *Moehlenpah*. In those cases, the individuals had not yet been declared totally incapacitated and totally disabled. Therefore, the trial courts may have found it beneficial to question the individuals directly in order to ascertain whether they had the capacity to retain private counsel. In this case, Mrs. Schieber had already been declared to be totally incapacitated and totally disabled. Therefore, the trial court found that, because of the prior adjudication, Mrs. Schieber was incapable of hiring private counsel.

Mr. Ross argued at the hearing that the prior adjudication created a presumption that Mrs. Schieber did not have the capacity to retain private counsel. Pursuant to section 475.078.3, "A person who has been adjudicated incapacitated or disabled or both shall be presumed to be incompetent." In his brief, Mr. Petry states that while the statute indicates that a person who has been adjudicated incapacitated and/or disabled is presumed to be incompetent, the last sentence of the statute qualifies the presumption by providing that "[t]he court at any time after a hearing on the question may determine that an incapacitated [or] disabled ... person is incompetent for some purposes and competent for other purposes." § 475.078.3. Although this portion of the statute provides the trial court with the ability to declare Mrs. Schieber competent for other purposes, such as retaining private counsel, it does not compel the trial court to do so.

As the qualification in section 475.078.3 suggests, the fact that an individual has been declared incapacitated and disabled does not entirely foreclose the possibility that the individual may retain private counsel. For example, the test enunciated in *Link* suggests that, even if the individual does not have the capacity to choose an attorney, the court may still substitute pri-

vate counsel for court-appointed counsel if the court is satisfied that private counsel is and will be free from outside influence. In this case, due to Mr. Petry's prior and continuing representation of Ms. Hebert, the sister of Mrs. Schieber, it is clear that the trial court was not satisfied that Mr. Petry would be free from outside influence. Based on the facts presented to the trial court, including the prior adjudication of Mrs. Schieber's total incapacitation and Mr. Petry's representation of Ms. Hebert, the trial court did not abuse its discretion in granting Mr. Ross's motion to disqualify Mr. Petry.

The judgment of the trial court is affirmed.

PFEIFFER, J. concurs.

ELLIS, J. concurs in separate opinion filed; PFEIFFER, J. concurs in opinion of ELLIS, J.

JOSEPH M. ELLIS, Judge, Concurring.

I concur in the majority opinion. I write separately, however, to emphasize that notwithstanding Mrs. Schieber's previous adjudication as totally incapacitated and totally disabled, she still can seek, select, and be represented by otherwise qualified private counsel.

Section 475.075.3 [4] provides that upon the filing of a petition for a guardian or conservator, "the court shall immediately appoint an attorney to represent the respondent *in the proceeding.*" (Emphasis added). Typically, counsel represents the alleged incapacitated or disabled person through the hearing on the petition and the entry of judgment, including appeal, if any, i.e., *"the proceeding."* Once a judgment of incapacity or disability and the appointment of a guardian and conservator has been entered, the incapacitated or disabled person's appointed counsel's duties

are completed and the attorney's representation ends. At that point, the guardian or conservator will likely still be represented by an attorney, but generally the ward or protectee individually will not be represented by counsel.

The Guardianship Code contains safeguards for those who have been declared incapacitated or disabled because the legislature realized that such persons lose their freedom to a great extent. For example, the guardian makes all the decisions as to where the ward resides, what care he or she receives, what the ward can and cannot do, etc. While recognizing the necessity for such circumstances, the legislature was also mindful that the conditions resulting in incapacity or disability can change, that an incapacitated or disabled person can improve. Consequently, the Guardianship chapter of the Probate Code includes procedures for restoration. Specifically, Section 475.083.4, RSMo Cum. Supp.2008, provides, in pertinent part:

> At any time the guardian, conservator or any person on behalf of the ward or protectee may, individually or jointly with the ward or protectee, or *the ward or protectee individually may petition the court* to restore the ward or protectee, or to decrease the powers of the guardian or conservator, except that if the court determines that the petition is frivolous, the court may summarily dismiss the petition without hearing.

(Emphasis added).

Section 475.083.6, RSMo Cum. Supp. 2008, further prescribes:

> Upon the filing of a petition without the joinder of the guardian or conservator, the court shall cause the petition to be set for hearing with notice to the guardian or conservator. *If the ward or protectee is not represented by an attorney,* the court shall appoint an attorney to

---

**4.** All statutory references are to RSMo 2000 unless otherwise noted.

represent the ward or protectee in such proceeding. The burden of proof by a preponderance of the evidence shall be upon the petitioner. Such a petition may not be filed more than once every one hundred eighty days.

(Emphasis added).

By providing that a ward or protectee individually may petition the court for restoration, and providing that *"if"* the ward or protectee is unrepresented by counsel, an attorney is to be appointed, the legislature implicitly, if not expressly, acknowledged that a ward or protectee may seek out counsel of his or her choosing to assist in seeking restoration. And not infrequently, that is precisely what happens. The ward or protectee individually, or a friend or relative of the ward or protectee, contacts an attorney requesting assistance in securing restoration. The attorney meets with them, looks at the records, conducts an investigation, perhaps discusses the matter with the guardian or conservator, evaluates the issues, and ultimately decides whether to take the case. The ward or protectee has every right to seek legal representation and assistance, and the attorney has every right to consult with the ward or protectee and undertake representation.

The confusion arises as to whether a totally incapacitated and disabled person can *hire* an attorney, that is, commit to pay the attorney for his or her services. Section 475.078.2 provides, in pertinent part, that "[a]n adjudication of incapacity or disability does operate to impose upon the ward or protectee all legal disabilities provided by law. . . ." Similarly, § 475.078.3 declares that "[a] person who has been adjudicated incapacitated or disabled or both shall be presumed to be incompetent." Thus, a totally incapacitated or disabled person lacks capacity to enter into a binding contract to expend his or her funds to pay for legal services.

But, as noted *supra,* this does not preclude the ward or protectee from requesting representation by private counsel, nor does it prevent an attorney from undertaking such representation. A lawyer may take the case on a *pro bono* basis. Or, it is not uncommon for friends or relatives to agree to pay for such services. If not, the lawyer may have no guarantee of payment for his or her services from the ward or protectee. Under those circumstances, payment of the lawyer's fees may be dependent upon the outcome of the case. If successful in restoring the ward or protectee, there would be nothing to prevent the ward or protectee from paying the lawyer. Or, if partially successful, for example by securing placement of the ward or protectee in a less restrictive environment, or a partial restoration of capacity, the court might order payment of fees from the ward or protectee's assets because the lawyer's services provided a valuable service to the guardianship estate. There may be any number of other possibilities.

In any event, I concur in the primary opinion because private counsel in this case, Mr. Petry, is disqualified from representing Mrs. Schieber because of a conflict of interest. Additionally, the trial court's ruling, which is affirmed by the primary opinion, was that Mrs. Schieber "did not have the capacity to *hire* private counsel." *Maj. Op.* at 132 (Emphasis added). I would agree that she did not have capacity to *hire* private counsel, as in agreeing to pay for counsel's services. However, as explained herein, Mrs. Schieber, even though totally incapacitated and totally disabled, is not precluded from seeking and securing legal representation to assist her in restorative efforts.

PFEIFFER, J., concurs.