**In the Interest of B.M.O., K.W.J., and M.C.J., minors.**

**Wayne County Juvenile Office, Petitioner–Respondent,**

v.

**S.A.J., Respondent–Appellant.**

**No. SD 29710.**

Missouri Court of Appeals, Southern District, Division Two.

May 6, 2010.

Christopher L. Yarbro, Poplar Bluff, MO, for Appellant.

Christina L. Kime, Piedmont, MO, for Respondent Wayne County Juvenile Office.

Gary L. Gardner (No brief filed.), Jefferson City, MO, for Respondent Mo. Dept. of Social Services, Children's Div.

Cynthia A. Goforth, Piedmont, MO, for minors.

NANCY STEFFEN RAHMEYER, Judge.

Sherry Johnson ("Appellant") is the biological mother of B.M.O., K.W.J., and M.C.J.[1] Upon a finding of neglect and abuse, the Circuit Court of Wayne County entered its judgment terminating Appellant's parental rights on February 18, 2009, which she now appeals. Appellant filed a motion to strike certain items from the record, which was taken with the case. We deny the motion and affirm the judgment.

On June 22, 2005, the execution of a search warrant at the home of Appellant and her then-husband, Kenneth Johnson, uncovered evidence that Kenneth Johnson had sexually abused Appellant's children, two of whom were also his biological children.[2] The children were removed from the home and later placed in legal and physical custody of the Children's Division of the Missouri Department of Social Services ("the Division") after the Circuit Court of Wayne County found that: Appellant knew about, and participated in, the sexual abuse of her minor daughter on at least one occasion; knew or should have known about other instances of sexual abuse; and kept various items of drug paraphernalia in her bedroom.

The Division filed a petition for termination of parental rights, which was dismissed because the Division did not provide Appellant with the court ordered investigation and social study. Six months later, the Wayne County Juvenile Office ("Respondent") filed a peti-

---

1. At the time the present action commenced, B.M.O. was sixteen years old, K.W.J. was eleven years old, and M.C.J. was nine years old. At present, B.M.O. is eighteen, K.W.J. is fourteen, and M.C.J. is twelve.

2. Even though Appellant claimed at trial she was unaware of the abuse of the children, at this time she is fully aware of the serious and extended sexual exploitation of the children by Kenneth Johnson. It serves no purpose to detail the specifics.

tion for termination of Appellant's parental rights, alleging: that the children were subjected to sexual abuse by Kenneth Johnson of which Appellant either knew or should have known; that Appellant suffered from a chemical dependency preventing her from providing the necessary care, custody, and control of her children; and that Appellant had continuously failed to provide the children with adequate food, shelter, and education. Over Appellant's objection, the court ordered the Division to complete an investigation and social study, and later set the cause for trial. At the termination trial, the trial court took judicial notice of Respondent's file, which included an affidavit of publication as to service upon the biological father of B.M.O., a transcript of the pre-hearing conference, the investigation and social study, and the order for the social study, over Appellant's objection to judicial notice of the social study.

## FACTS

Ralph Muzney, the Division case manager assigned to the children, testified as to his role in investigating the situation and drafting the study, and also concerning Appellant's continual contact with her children. Rhonda Allen, the foster parent with custody of K.W.J. and M.C.J., also testified regarding Appellant's correspondence with her children. Respondent offered a letter sent to B.M.O. from one Michael Miller, an inmate and apparent acquaintance of Appellant, to demonstrate that Appellant had supplied B.M.O.'s address to an unknown person.

Tom Keeney, the deputy juvenile officer, testified that during his second home visit, he observed drug paraphernalia in Appellant's bedroom and one nude picture of M.C.J. Keeney also testified that: K.W.J. had disclosed that Kenneth Johnson had sexually abused him; K.W.J. indicated that Appellant had walked in on one such instance of abuse; B.M.O. had disclosed that Kenneth Johnson had abused her; and B.M.O. indicated that she could smell drugs in the house and that Appellant would lock herself in her room. Keeney also read into the record several excerpts from internet chat logs purportedly authored by Appellant and Kenneth Johnson. The chats authored under a screen name used by Appellant indicated that Appellant had sought to obtain marijuana, and had forced someone to leave her house because that someone had molested her daughter.

Kenneth Nix, a detective with the Clayton Police Department serving as the operations supervisor for the computer crime unit, was present when the search warrant was executed. He testified regarding the computers seized in the search and the photos, data, and other information found on those computers upon further investigation. Nix identified the author of several of the chats to be Appellant.

Diane Silman, the executive director for the Ozark Foothills Child Advocacy Center and a forensic interviewer, testified that the children alleged sexual abuse committed by Kenneth Johnson, and that K.W.J. disclosed that one such instance occurred with Appellant's knowledge. Following Silman's testimony, two depositions given by B.M.O., one deposition given by K.W.J., and one deposition given by Denise Stephens, a family counselor for Appellant's children, were received into evidence. The depositions contained testimony from B.M.O. and K.W.J. that they both believed Appellant knew about the sexual abuse, and testimony from Stephens that she had informed the children of the reason they were in foster care.

At the close of Respondent's evidence, Appellant offered into evidence a handwritten letter from B.M.O. to Appellant, a

transcript of a deposition given by M.C.J., a transcript of a deposition given by K.W.J., and a transcript of a deposition given by B.M.O. In those depositions, the children did not indicate that Appellant knew of the sexual abuse.

The trial court found by clear, cogent, and convincing evidence that the children had been abused and neglected by Appellant, pursuant to section 211.447.5(2),[3] made the necessary findings under subsections 211.447.5(2)(a)–(d) and 211.447.7(1)–(7), and found that the termination of parental rights was in the best interest of the children.

## STANDARD OF REVIEW

■ We must affirm the trial court's judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In the context of a termination of parental rights case, we must determine whether the trial court properly determined that at least one statutory ground for termination exists based on the evidence before it, and whether the trial court properly found termination to be in the best interest of the child. *In re K.A.C.*, 246 S.W.3d 537, 543 (Mo.App. S.D.2008). In doing so, we view the evidence in the light most favorable to the judgment, giving deference to the trial court's credibility determinations. *In re C.A.M.*, 282 S.W.3d 398, 405 (Mo.App. S.D.2009).

## POINT I

■ In her first point, Appellant alleges that the trial court erred in finding the children had been in foster care for at least fifteen of the past twenty-two months as a ground for termination because Re-

spondent had not pled the issue. This argument is misguided. Section 211.447.2(1) mandates that the Division file a petition to terminate parental rights when a child has been in foster care for at least fifteen of the most recent twenty-two months. The subsection acts as a "filing trigger," but is not itself a sufficient ground on which to base the termination of parental rights. *In re M.D.R.*, 124 S.W.3d 469, 476 (Mo. banc 2004). While the trial court did make a factual finding that the children had been in foster care for at least fifteen of the most recent twenty-two months, the trial court clearly stated that its ground for terminating parental rights was abuse and neglect by Appellant pursuant to section 211.447.5(2). Point I is denied.

## POINT II

■ In her second point, Appellant argues that the trial court erred in terminating her parental rights because the court based its decision on past acts and failed to consider the likelihood of future harm. We disagree. As in *In re T.M.E.*, 169 S.W.3d 581 (Mo.App. W.D.2005), the trial court made appropriate findings as to Appellant's past behavior and predicted future conduct relevant to abuse and neglect that are supported by the evidence. *Id.* at 588. Among other findings, the trial court found: that Appellant suffers from a chemical dependency that prevents her from consistently providing the necessary care for her children; that Appellant committed a severe act or recurrent acts of physical, emotional, or sexual abuse toward her children, or knew or should have known about such acts committed by others; and that Appellant continuously failed to provide the children with adequate food, clothing, shelter, or education.

---

**3.** All references to statutes are to RSMo Cum. Supp.2007, unless otherwise specified.

The use of words like "consistently," "recurrent," and "continuously" used to describe Appellant's parental actions or lack thereof, along with evidence that she permitted the abuse without intervening, allows us to infer that the trial court believed she would continue to be a threat to the welfare of the children. In addition, the trial court found that Appellant's incarceration since 2005 made it unlikely that future services would bring about a lasting parental adjustment that would enable the return of the children within an ascertainable time, and found that Appellant's disinterest and lack of commitment to her children hinders any effort to provide services to aid in reunification.

Those findings are amply supported in the record. Exhibit 19, the letter from Michael Miller addressed to B.M.O., showed that Appellant had provided B.M.O.'s address to enable a convict to contact B.M.O. Combined with Exhibit 3, a letter from Appellant to B.M.O. informing her that Michael Miller would be contacting her, there is a sufficient basis to demonstrate that the trial court considered the likelihood of future harm in terminating Appellant's parental rights. Appellant appeared to have no inclination to protect any of her children from her then-husband, who pled guilty and received sixty years in the federal penitentiary for his actions, or from potential future abusers. When added to the deposition testimony that Appellant was aware of the abuse, we have no problem finding no error in the trial court's finding that Appellant abused and neglected the children and the inference that it would continue. Point II is denied.

### POINT III

In her third point, Appellant argues that the trial court erred in admitting the hearsay testimony of Thomas Keeney, Diane Silman, and Denise Stephens regarding statements made by the children, in that they did not fall under a recognized hearsay exception. We disagree. Respondent concedes that the evidence complained of constitutes hearsay. This Court, however, has recognized an exception to the hearsay rule that allows the trial court to consider such statements for their truth where the best interest of the child is the primary concern. *In re Marriage of P.K.A.*, 725 S.W.2d 78, 81 (Mo. App. S.D.1987). Where there is a substantial basis to believe a child's statements are true, the court is justified in considering them to prevent future harm to the child. *Id.* The exception should only be used where abuse may have occurred or been threatened and the child may not be competent or reasonably expected to testify to it. *Id.*

Here, the trial court heard testimony regarding the evidence found in the search executed pursuant to the warrant that indicated that sexual abuse had occurred. This evidence provides a substantial basis to believe that the statements of the children were true. The ages of the children, the nature of the abuse, and the fact that the abuser was the parent of the victims provided sufficient grounds for the trial court to believe the children might not be competent to testify nor reasonably expected to. The trial court is afforded discretion to consider such testimony and determine its weight; we cannot say that discretion was abused here. Point III is denied.

### POINT IV

In her fourth point, Appellant alleges that the trial court's finding of abuse and neglect was not supported by clear, cogent, and convincing evidence. We disagree. "Clear, cogent, and convincing evidence is that which 'instantly tilts the scales' in favor of termination when

weighed against the evidence presented by the parent whose rights were terminated." *In re C.A.L.*, 228 S.W.3d 66, 70 (Mo.App. S.D.2007) (quoting *In re A.M.F.*, 140 S.W.3d 201, 205 (Mo.App. S.D.2004)). There was evidence linking a screen name used in internet chats to Appellant. Internet chat logs attributable to that screen name indicated that Appellant knew of Kenneth Johnson's sexual abuse of her children. The same chat logs also demonstrated that Appellant suffered from a chemical dependency.

The testimony contained in depositions given by B.M.O. and K.W.J. also indicated that Appellant had a drug problem and knew about the sexual abuse. Both B.M.O. and K.W.J. stated that Appellant stayed in her room most of the time. B.M.O. testified that this was due to Appellant's drug use; she also stated that she had told Appellant that Kenneth Johnson had sexually abused her. K.W.J. testified that Appellant had walked in on one instance of abuse by Kenneth Johnson, and seen three other instances of abuse, two involving him and one involving M.C.J.

We also note that in Appellant's own deposition, she exercised her Fifth Amendment right against self-incrimination when asked: if she was present in the home while Kenneth Johnson sexually assaulted her children; if she posted or was aware that Kenneth Johnson posted pictures of her children on the internet; if she ever used illegal drugs; and if she asked Michael Miller to write to her children, among other questions. In a civil trial, a negative inference may be drawn from the invocation of Fifth Amendment privilege. *In re Care and Treatment of Burgess*, 147 S.W.3d 822, 833 (Mo.App. S.D.2004). This evidence tilts the scales in favor of termination when weighed against the earlier deposition testimony offered by Appellant. It therefore supports a finding

of abuse and neglect under section 211.447.5(2). Point IV is denied.

**POINT V**

In her fifth point, Appellant argues that the trial court abused its discretion in ordering the Division to undertake the statutorily required investigation and social study because the Division's participation in preparing it created an appearance of impropriety due to their advocacy and recommendation of termination. Again, we disagree. In order for us to find that the trial court abused its discretion, we must find its actions to be "clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re C.G.*, 212 S.W.3d 218, 224 (Mo.App. S.D.2007). We find no such circumstance here.

Section 211.455.3 requires an investigation and social study to be completed by the juvenile officer, the division of family services, or a public or private agency authorized or licensed to care for children. As the trial court noted, the only options available in Wayne County were the juvenile officer, who was the moving party in the case, or the Division, who had care of the children. The court selected the Division because it was not a moving party in the case and, realizing the potential bias and prejudice involved, received the report "solely for the purpose of meeting the statutory requirement." This well-reasoned approach was a far cry from shocking our sense of justice, and clearly indicated careful consideration by the trial court. Point V is denied.

**POINT VI**

In her sixth and final point, Appellant challenges the trial court's judgment on the ground that the statutory

requirements of section 211.455 were not met, in that the required investigation and social study was not performed. We disagree. Appellant acknowledges she did not object on the ground of compliance with section 211.455, so we review for plain error. Plain error is error that affects the substantial rights of a party and results in a manifest injustice or miscarriage of justice. *Ruzicka v. Ryder Student Transp. Services, Inc.*, 145 S.W.3d 1, 15 (Mo.App. S.D.2004). Appellant relies on the testimony of Ralph Muzney stating that he did not undertake a new study, but utilized a study previously done in the 2006 termination case that was dismissed. While the study admitted in this case contains much of the same historical information as the earlier study, a review of the report, which was signed by Muzney on November 20, 2007, indicates that additional information was added to the report after the initial report had been prepared. The combination of the historical information with the new information met the statutory requirements of section 211.455. Point VI is denied.

In addition to her six points on appeal, Appellant also filed a motion to strike certain items in the appellate record on the ground that they were not items properly before the trial court. Exhibit 19 was offered into evidence, but Appellant's hearsay objection was sustained, and it was received into evidence for the limited purpose of demonstrating that Appellant gave B.M.O.'s address to a convict so he could write to her. Exhibits offered into evidence but excluded by the trial court are properly part of the record on appeal. *State v. Garris*, 75 S.W.3d 367, 368 n. 1 (Mo.App. S.D.2002). As the remaining items referred to do not factor into our disposition of the case, the motion to strike is denied. *See Schieber v. Schieber*, 298 S.W.3d 130, 133 n. 2 (Mo.App. W.D.2009)

(denying motion to strike party's brief, appendix, and supplemental legal file on the ground that they included references to matters outside of the record because the court did not consider them in reaching its decision).

The judgment is affirmed.

LYNCH, P.J., McGHEE, SR.J., concur.